STATE OF MARYLAND *v.* EMORY L. COBLENTZ
[No. 42, April Term, 1935.]

*Decided July 12th, 1935.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, and JOHNSON, JJ.

*Herbert R. O'Conor, Attorney General,* and *Charles T. Le Viness, 3rd, Assistant Attorney General,* with whom was *James Clark, Assistant Counsel,* on the brief, for the State.

*Leo Weinberg,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is the second time this case has been here on demurrer. 167 Md. 523, 175 A. 340. In the former appeal it was held that the indictment was legally sufficient, the judgment on demurrer reversed, and the case remanded for further proceedings. A plea of *res judicata* had been filed by the defendant, but on appeal it was not considered by this court because it was not ruled on by the trial court. Code, art. 5, sec. 10. When the case went back to the Criminal Court of Baltimore City, the defendant filed an amended plea of *res judicata,* to which the State demurred, and from a judgment on demurrer for the defendant the State appeals.

The indictment, found by a grand jury of Howard County, and the case removed for trial to Baltimore City, charged the defendant, Emory L. Coblentz, as an officer and agent of the Central Trust Company of Maryland, with the violation of the provisions of section 170 of article 27 of the Code, in fraudulently signing or assenting to a statement or publication "containing untruthful representations of its affairs, assets or liabilities with a view to enhance the market value of its shares, for the purpose of accomplishing the fraud set out in the indictment." The publications were two statements purporting to show the bank's condition on December 31st, 1930, and June 30th, 1931. The bank was closed and placed in the hands of the bank commissioner as receiver on September 2nd, 1931. It is not necessary to give the details of the indictment, as they are sufficiently set out in the opinion in the last appeal, 167 Md. 523, 175 A. 340.

The plea of *res judicata* alleges that the defendant, as president of the Central Trust Company, was indicted and

tried in Frederick County for accepting a deposit from one John F. Oland, in the sum of $125, on September 2nd, 1931, at Frederick County, "when said banking institution was known by him, the said Emory L. Coblentz, to be insolvent," in violation of the provisions of section 58, article 11, of the Code; "that the acceptance of the deposit was an undisputed fact in the case and that the only issues that the court, sitting as a jury, was called upon to try and determine were (1) The insolvency of the Bank, and, (2), the defendant's knowledge of the same"; that the State offered in evidence the statement, condensed from the regular statement to the bank commissioner of December 31st, 1930, showing the book value of loans and discounts to be $13,791,199.41 and stocks and bonds $3,016,241.29; the statement of June 30th, 1931, showing the aggregate of these items to be $738,-473.97 less; that the State's witnesses showed the value of the loans and discounts to be $6,628,911 and of the stocks and bonds to be $776,330, or 54 per cent. less than the statement of June 30th, 1931; that it concentrated its attack on the loans to three subsidiaries, carried on the books at $6,138,420.88, offering evidence of the true value to be $544,162, or a reduction in those items alone of $5,594,258.88; that there was evidence tending to prove that there was no substantial difference in the bank's condition on June 30th, 1931, and September 2nd, 1931; that there was a complete investigation of the bank's affairs from September 2nd, 1929, and evidence to show the defendant's knowledge of the depreciation in the value of its assets during that period; "that the defendant offered evidence to refute and contradict the evidence of the State's witnesses and * * * of his good faith as president of the institution and of his honest belief in its solvency and of the value of its assets as reflected on the books and published statements of the bank aforesaid"; that it is charged that the defendant, as president of the Central Trust Company of Maryland, "unlawfully and fraudulently signed or assented to a statement and publication

for the public and shareholders of said corporation purporting to show the true financial condition of the Central Trust Company of Maryland," which "contained untruthful representations of its affairs, Assets and Liabilities," in that it "did not have the Resources, Loans and Discounts, Stocks and Bonds, as shown on its statements but that they were materially less than that amount," all for the purpose of inducing and procuring the Washington Trust Company of Howard County to transfer its property and assets to the Central Trust Company. The plea further says: "That the defendant was acquitted of the charge aforesaid, in Frederick County, Maryland, by the verdict of 'Not Guilty' by the Court, sitting as a jury, rendered as aforesaid on June 27th, 1933, and in order for the Court to arrive at such a verdict and judgment, which still remains unreversed on the records of the Circuit Court for Frederick County it became necessary for the Court to determine, as the basis for its verdict, either that the bank was not insolvent within the meaning of the law, that is to say that there was not the material depreciation in the value of the assets so as to render the bank insolvent within the meaning of the law, or that the defendant was without knowledge of said material depreciation in the value of the assets.

"That the State of Maryland is therefore estopped to again assert in another tribunal as against this defendant either that (1), there was a material depreciation in the value of the assets aforesaid, or, (2) that the defendant had knowledge of such fact.

"That the Circuit Court for Frederick County, sitting as a jury, did determine and adjudicate that the defendant did not know, as contended by the State, that the values of the loans and discounts, stocks and bonds, as carried on the books and published statements of the bank were false and erroneous, in that said assets were worth materially less than said values.

"Wherefore the defendant asserts that the State of Maryland is now estopped to again litigate the same

questions of fact as against his defendant, which have been conclusively adjudicated by the verdict and judgment of the Circuit Court of Frederick County aforesaid."

The defendant does not contend that a plea of former jeopardy could be interposed in this case, nor could it be, for the statutory offenses for which the defendant was indicted are so dissimilar as not to justify such a plea. What he does contend is that there was an adjudication of the same issues in Frederick County which the State must sustain by evidence established in the former case in order to demand a conviction in the Howard County case. This is the first time such a plea has ever been before this court, though we have had some cases in which the same contention, in effect, has been made under pleas of former jeopardy. *Watson v. State*, 105 Md. 650, 66 A. 635; *Novak v. State*, 139 Md. 538, 115 A. 853; *Gilpin v. State*, 142 Md. 464, 121 A. 354.

In *Freeman on Judgments*, (5th Ed.), sec. 648, the rule invoked by the defendant is: "There is no reason why a final judgment in a criminal case or proceeding should not, under proper circumstances, be given conclusive effect as an estoppel or bar. The same policy which dictates the rule in civil cases requires it in criminal cases. The principles applicable in judgments in criminal cases are, in general, identical so far as the question of estoppel is involved, with the principles recognized in civil cases." The author, however, recognizes its limitations, when he says: "But under such circumstances, the previous judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated." "If there is a contest between the State and a defendant over an issue, I know of no reason why it is not *res judicata* in another criminal case," *Van Fleet, Former Adjudication;* though the same author says (section 594): "There is little similarity between the rules which govern the doctrine of *res judicata* in civil and criminal cases." In criminal cases the difference between a plea of former jeopardy and *res judicata* are so slight as to

be hardly distinguishable, and in many criminal cases, where the plea of former jeopardy was made, the courts in discussing the question applied the principles of *res judicata*. That was the case in *United States v. Adams*, 281 U. S. 202, 50 S. Ct. 269, 74 L. Ed. 807, in which the opinion was written by Mr. Justice Holmes. There were two indictments, one of which charged the defendant with a false entry on the books of a bank. He had been acquitted and was again indicted for another entry of the same amount, which was found to be the same item, and the plea of former acquittal was sustained. The second indictment on the appeal was for the making of a false statement in a report of the bank's condition, and in that case the judgment of the district court sustaining the plea of former acquittal was reversed; the court saying: "It is obvious that technically the plea was bad because the offense alleged was a different offense," and then the opinion goes on to show that the acquittal on the first indictment would not be available as a defense if the evidence on the second indictment varied from the first in one essential particular. "There is no estoppel *per rem judicatam*, unless the case put forward by the party sought to be estopped, not only relates to the same matter (in the physical sense) as that which was the subject of the judicial decision in the former proceedings, but also raises the identical question of law, or issue of fact, which either expressly, or by necessary implication, in accordance with canons of construction already expounded, was in substance determined by such decision." Page 119 of *Bower on Res Judicata*.

*Hochheimer's Criminal Law*, in general use in this state, sec. 46, says that: "In addition to the doctrine of former jeopardy, in its strict sense, the doctrine of *res judicata*, is also applicable in criminal cases."

The defendant in his brief quotes at some length from the opinion in *Coffey v. United States*, 116 U. S. 436, 6 S. Ct. 437, 29 L. Ed. 684, a civil case. The defendant had been acquitted of a charge of violating the internal rev-

enue laws, after which the government instituted a proceeding *in rem* to seize the property involved in the criminal case. A plea of *res judicata* was interposed by the defendant, and it was held that: "The judgment of acquittal in the criminal proceeding ascertained that the facts which were the basis of that proceeding and are the basis of this one, and which are made by the statute the foundation of any punishment, personal or pecuniary, did not exist."

Mr. Freeman in his work on *Judgments* (5th Ed.) sec. 648, says: "The previous judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated," and he then cites the case of *Jay v. State,* 15 Ala. App. 255, 73 So. 137 of which he says: "Thus, an acquittal of the charge of seduction does not adjudicate the question of sexual intercourse, although that was one of the issues in the case, since the acquittal might have been due to the failure to establish other facts essential to a conviction." The opinion in that case is to the effect that all of the elements necessary to a conviction in one case must be present in the subsequent case where the former adjudication is pleaded, otherwise the plea is not available; in other words, the offenses must agree in all their essential facts, and this agrees with what Mr. Justice Holmes said in *United States v. Adams,* 281 U. S. 202, 50 S. Ct. 269, 74 L. Ed. 807. See 15 *R. C. L., Judgments,* p. 977, sec. 452.

Applying this test to the facts stated in the special plea in this case, what do we find? Emory L. Coblentz was indicted by a grand jury in Frederick County, as president of the Central Trust Company, for accepting a deposit of $125 from John F. Oland, then and there knowing the Central Trust Company to be insolvent, in violation of a provision of section 58, article 11, of the Code. He elected to be tried by the court, two judges sitting, as he had a right to do under the Constitution of this state. Under the statute, in order to justify a conviction, it was necessary for the State to establish four facts: (1) That

he was an official of the bank; (2) that the bank accepted the deposit (*Coblentz v. State,* 164 Md. 558, 166 A. 45); (3) that the bank was insolvent on September 2nd, 1931, and on no other day, before or since; (4) that the defendant knew the bank was insolvent when the deposit was accepted.

If any one of these elements of proof was absent, then he was entitled to an acquittal. In this state (Constitution, sec. 5, art. 15), the jury are the judges of law as well as of fact, and in this lies the chief weakness of the defendant's special plea, because the court does not instruct the jury; it may advise, but the jury may ignore the advice. If the advice be erroneous, the judgment may be reversed on appeal. "The judge * * * cannot * * * bind the jury as to the definition of the crime, or as to the legal effect of the evidence before them. He can only bind and conclude the jury as to what evidence shall be considered by them." Judge Alvey in *Beard v. State,* 71 Md. 275, 280, 17 A. 1044, 1045; *Dick v. State,* 107 Md. 11, 17, 18, 68 A. 286, 576; *Rasin v. State,* 153 Md. 431, 437, 138 A. 338.

When a defendant in a criminal case elects to be tried before the court, in arriving at a conclusion on the facts the judge simply exercises the same functions as twelve jurors; what he says or does means no more than if said or done by them. His opinion of the case is expressed by and confined by his verdict of "guilty" or "not guilty," and the mental operations by which he reaches a decision find their legal expression in no other way. "An acquittal of a party does not ascertain or determine any precise facts. It may have resulted from an insufficiency of evidence as to some particular fact, where several facts are necessary ingredients of the crime." *Bell v. State,* 57 Md. 108, 116; 15 *R. C. L., Judgments,* 980, sec. 454.

It may be true, as the plea states, that the affairs of the bank for two years prior to its closing were investigated at the trial, and that the State offered evidence to show a condition of hopeless insolvency for a long period of time before and on the 2nd day of September, 1931,

but the plea also states that the defendant offered evidence to refute this, which means that he attempted to prove the bank solvent on the 2nd day of September, 1931, and the question of solvency was one for the court, sitting as a jury, to decide by its verdict. The defendant relies very largely upon the statement of opinion of the court when rendering its verdict that the insolvency did exist when the alleged offense was committed, but that the defendant was not aware of it and had acted in good faith. It was conceded by the State that the deposit was made as charged, and therefore the court, sitting as a jury, speaking through its verdict, found either that the bank was solvent or, if insolvent, the defendant did not know it. The opinion or statement has no place in the record and is not a part of it, and is therefore not well pleaded and not admitted by the demurrer. *Central Trust Company v. H. B. Mehring Co.*, 154 Md. 477, 485, 141 A. 111; *Trustees of Methodist Church v. Browne*, 39 Md. 160.

A comparison of the statutes under which the two indictments were found shows that they are not essentially the same in the facts required to sustain a conviction. The Frederick County indictment required proof of insolvency on the day of the alleged offense; the Howard County indictment does not; it only requires "untruthful representations of its affairs, assets or liabilities." This may amount to insolvency or it may not. The indictment charged that the statements published and used by the defendant to defraud the Washington Trust Company of Howard County contained statements of the assets of the Central Trust Company which showed amounts materially less than they were actually worth, and that it was done for the criminal purpose set out in the indictment. It is not necessary to prove insolvency, and even though that may be the effect of the evidence, the issue that the statements contained untruthful representations of value is still the same and differs from the requirements of section 58 of article 11 of the Code, under which the Frederick County indictment was found, the latter requiring

evidence amounting to insolvency, not that its stock is worth substantially less than its statements purport it to be.

This is a distinction or difference which brings these cases within the exception to the rule of *res judicata* mentioned by Mr. Justice Holmes and Mr. Freeman, *supra*. To bring these cases within the rule, the parties must not only be the same, the evidence required the same, but they must meet at the same time and have to do with the same issue. "The criterion whereby this identity is to be determined is, as in cases of *autrefois acquit* also, whether the accused, on the former prosecution, stood in peril of being convicted of the very crime or offense which is the subject of the present indictment or complaint, rather than whether the evidence sufficient to support the second charge would have been sufficient to warrant a legal conviction on the first." *Bower on Res Judicata*, sec. 333, p. 197; *Rex v. Tonks*, [1916] 1 K. B. Div. 443, 450, 451; *Gilpin v. State*, 142 Md. 464, 121 A. 354. In other words, the evidence necessary to produce a conviction in one case must be adequate to support a conviction in the other. Nothing has been determined in the Frederick County case which precludes a prosecution in the case now before us.

*Judgment reversed, with costs, and case remanded.*

BOND, C. J., filed a dissenting opinion as follows, in which JOHNSON, J., concurred.

The plea alleges that the two prosecutions have been based on the identical contentions of fact that a specified group of the company's assets had depreciated greatly in value and that the defendant knew of the depreciation. From that known great loss of values, it is alleged, it resulted that the company was known to be insolvent on September 2nd, 1931, and its financial statements of the earlier dates retaining higher valuations were known to

be false; and the two criminal prosecutions have followed separately the two consequences of the same known loss of values. In the first prosecution, on the charge of receiving deposits when the company was thus known to be insolvent, it has been judicially determined that the defendant did not know of the loss of values alleged; yet the second indictment, on the charge of issuing false statements, is brought to establish the same fact of known great loss of values. This seems to be the substance of the plea; and upon that showing one identical basic fact appears to me to have been settled, and the State seems to be estopped from making this second charge on it.

The only grounds suggested for differentiating the facts in the two cases are that in the former prosecution the date of the insolvency, and the knowledge of the great depreciation which resulted in the insolvency, was September 2nd, 1931, two months after the issue of the last financial statement, and that at the beginning and the end of those two months the depreciation may not have been the same. But on the demurrer the plea is being tested at its face value, and it expressly negatives the possibility that there may have been any material difference in the loss of values and the condition of the assets during that time; and, of course, if the defendant did not know of the loss in September, he did not know of it in June.

The plea is not one of double jeopardy on the same charge, but one of estoppel by res judicata; and there is a difference between the two. Estoppel on the latter ground may arise from a finding of a single fact in the first prosecution, to be proved by evidence available in the record or out of it. "We are here concerned, however, with res judicata as distinguished from former jeopardy, which has no necessary connections with judgments though both doctrines may be operative at the same time. Even when the crimes charged are different, and a plea of former jeopardy therefore unavailable, a criminal judgment is res judicata of every matter determined by

it, where the conditions essential to the operation of the doctrine are present. But under such circumstances the previous judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated." *Freeman, Judgments* (5th Ed.) sec. 648; *Bigelow, Estoppel* (6th Ed.) 100. "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell v. County of Sac*, 94 U. S. 351, 352, 353, 24 L. Ed. 195; *Russell v. Place*, 94 U. S. 606, 24 L. Ed. 214. "What was involved and determined in the former suit is to be tested by an examination of the record and proceedings therein, including the pleadings, the evidence submitted, the respective contentions of the parties, and the findings and opinion of the court; there being no suggestion that this is a proper case for resorting to extrinsic evidence." *Oklahoma v. Texas*, 256 U. S. 70, 88, 41 S. Ct. 420, 423, 65 L. Ed. 831; *National Foundry Works v. Oconto Co.*, 183 U. S. 216, 234, 22 S. Ct. 111, 46 L. Ed. 157; *Whitehurst v. Rogers*, 38 Md. 503, 512; *Beall v. Pearre*, 12 Md. 550, 564; *Garrott v. Johnson*, 11 Gill & J. 173, 192; *Freeman, Judgments*, secs. 768 and 771.

As stated in many decisions, the object in applying the estoppel of *res judicata* is not only to protect a defendant from vexatious litigation, but also for the benefit of the public, in making an end of litigation of a question for which the public tribunals have once furnished an answer. *Southern Pac. R. Co. v. United States*, 168 U. S. 1, 48, 18 S. Ct. 18, 42 L. Ed. 355. Here the identity of the basic fact in prosecutions appears to be sufficiently pleaded, the State has submitted the case on the question of the sufficiency of the matter alleged, and I think this litigation should end at this point with an affirmance of the action in overruling the demurrer.

*On Motion to Vacate Opinion.*

BOND, C. J., speaking for the Court.

On behalf of the appellee it is moved that the opinion and decision entered in this case be vacated because of disqualification of one of the judges and an equal division of opinion of the remaining, qualified judges, with the result that the judgment below in the appellee's favor would stand affirmed.

The motion comes as an afterthought, for at the argument of the case, and up to some time after the decision, no objection to the court as constituted appears to have occurred to the appellee. And that fact alone might render it improper to consider the motion now. But there was clearly no disqualification.

In the first of the appellee's cases to be tried and to be brought before this court, *(Coblentz v. State,* 164 Md. 558, 166 A. 45), Judge Sloan, in the Circuit Court for Allegany County, had sat as one of the triers of fact, without a jury; and he, accordingly, took no part in the hearing and decision of the case on appeal. That case was upon an indictment found originally in Howard County, on a charge of accepting a deposit of money in a banking institution when the institution was known by the accused to be insolvent. And the present motion states that on the trial the judges found against the defendant on questions of fact, similar to questions which would hereafter be decided in this case, upon a trial. Although the present case, on the third indictment, was not one with which Judge Sloan had any connection below, and is on a charge of violating a different statute, still his having previously decided against the defendant questions of fact similar to those which would hereafter be decided in this case on a trial, are thought to have disqualified him for taking part now in the review of the decision of the Criminal Court of Baltimore on the question of *res judicata* raised before it.

The objection is based on the constitutional provision that "the judge who heard the cause below shall not par-

ticipate in the decision." Const. Maryland, art. 4, sec. 15. And there is authority for the contention that a case in which one judge participates in disregard of such a requirement would be disposed of by the votes of his associates. *United States v. Lancaster,* 5 Wheat, 434, 5 L. Ed. 432. But this is not a case in which Judge Sloan sat below, and on this appeal the court has nothing to do with the ultimate finding of facts in the case. We do not mean to decide that there would be a disqualification in this third case even if the same issues of fact could in some way be brought up on appeal. See reviews of decisions, 25 *L. R. A.* 118; 45 *L. R. A. (N. S.)* 511, 519, 526; *Ann. Cas.* 1913-C, 251; *Ann. Cas.* 1917-A, 843; 96 *A. L. R.* 546. And see *Blackburn v. Crawford,* 22 Md. 447, 459.

*Motion overruled.*