## ROUSE *v.* STATE

[No. 148, October Term, 1952.]

*Decided June 11, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*R. Palmer Ingram* and *Ernest L. Perkins,* with whom was *Malcolm J. Coan,* on the brief, for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *Anselm Sodaro,* States' Attorney for Baltimore City and *William H. Maynard,* Deputy State's Attorney, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, Walter Rouse, was indicted on the charge of conspiring with William Adams from August 1, 1947 to August 15, 1951, and "with certain other persons to the jurors unknown, unlawfully to violate the Lottery Laws of the State of Maryland."

The appellant prayed a severance, and Adams elected to be tried by the Court sitting without a jury, and was found guilty. His appeal was heard and determined just prior to this appeal on issues not here raised. See *Adams v. State,* 202 Md. 455, 97 A. 2d 281.

The jury found the appellant guilty. Judgment and sentence and this appeal followed.

At the outset of the trial, Rouse filed a motion to dismiss, which presented two defenses. The first was a defense of former jeopardy, based on the claim that since he had plead guilty on March 20, 1950 to a number of indictments, all of which charged him with substantive violations of the lottery laws of Maryland, and had been sentenced in each case, he now cannot be tried for conspiracy to commit the substantive crimes of which he has been convicted. The second defense was that the crime of lottery requires for its commission the concurrent action and cooperation of more than one person, and for various reasons there set forth, that where a

plurality of agents is necessary for the commission of a crime, conspiracy to commit the crime cannot be maintained or is not a distinct offense or is the same offense as the substantive crime.

The second defense has been abandoned completely in this Court; necessarily it would have failed the appellant in view of the over-ruling of similar contentions in *Hurwitz v. State,* 200 Md. 578, 92 A. 2d 575; *McGuire v. State,* 200 Md. 601, 92 A. 2d 582; and *Scarlett v. State,* 201 Md. 310, 93 A. 2d 753.

The claim of former jeopardy has likewise been abandoned here, under that name. The backbone of that defense is still argued under the name of *res judicata.* Under that broad heading, the appellant makes two points—one, the offenses proven at the trial of March 20, 1950, under the plea of guilty to each indictment, and the testimony of the raiding police officer "were the identical completed conspiracy proven in the instant case"; two, the sentence of three years imposed on the appellant in this case constitutes double punishment for the same offense.

In spite of the fact that the claim of *res judicata* was not expressly set forth in the motion to dismiss and the plea was "not guilty" (Rules 2 and 3, Criminal Rules of Practice and Procedure), the appellant says that the essentials of the defense of *res judicata* were all necessarily embraced in the defenses, including former jeopardy, presented by the motion to dismiss and that he may properly raise the defense of *res judicata* here. We think his contention is sound. In *State v. Coblentz,* 169 Md. 159, 164, 180 A. 266, 268, 185 A. 350, it was said: "In criminal cases the difference between a plea of former jeopardy and *res judicata* are so slight as to be hardly distinguishable, and in many criminal cases, where the plea of former jeopardy was made, the courts in discussing the question applied the principles of *res judicata.*"

The appellant concedes expressly that former jeopardy would not prevent his conviction in the present case,

because that defense can be invoked only when the crimes are the same in law and in fact; he admits that the crime of conspiracy is not the same in law and in fact as the substantive crime which the appellant, if guilty, conspired to commit. *Gilpin v. State,* 142 Md. 464, 121 A. 354; *State v. Coblentz, supra; Thompson v. Johnston,* 9 Cir., 94 F. 2d 355; *U. S. v. Rabinowich,* 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; *Pinkerton v. U. S.,* 328 U. S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489; *Sealfon v. U. S.,* 332 U. S. 575, 68 S. Ct. 237, 92 L. Ed. 180.

It is plain that while disclaiming reliance on former jeopardy, or *autre fois convict,* and invoking *res judicata,* appellant necessarily relies on them. Otherwise, his claim of double punishment for the same offense would fall, as indeed it must, under the cases. This Court has held "that an acquittal of a particular crime does not bar a subsequent prosecution for a conspiracy to commit the crime." *Scarlett v. State, supra* [93 A. 2d 757]. A conviction of the substantive crime does not change the fact that conspiracy to commit that crime is a different and additional crime, and that separate punishment may be meted out for each. *Gilpin v. State, supra; Pinkerton v. U. S., supra.* There, two brothers were indicted for violations of the Internal Revenue Code. The indictment contained ten substantive counts and one conspiracy count. One brother was convicted on nine of the substantive counts and on the conspiracy count. The other was convicted on six of the substantive counts and on the conspiracy count. On appeal, the traversers contended that the substantive crime and the conspiracy had merged, or that each substantive count had become a separate conspiracy count, so that there could be but one conviction and sentence. The Supreme Court, in denying this contention, said at page 643 of 328 U. S. at page 1182 of 66 S. Ct.:

"The common law rule that the substantive offense, if a felony, was merged in the conspiracy, has little vitality in this country. It has been long and consistently recognized by the

Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. . . A conviction for the conspiracy may be had though the substantive offense was completed. . . And the plea of double jeopardy is no defense to a conviction for both offenses. (Citing cases)."

The Court added: "Moreover, it is not material that overt acts charged in the conspiracy counts were also charged and proved as substantive offenses. As stated in *Sneed v. United States, supra* [CCA 5th, 298 F.] p. 913, 'If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it.' The agreement to do an unlawful act is even then distinct from the doing of the act."

The State does not dispute, nor could it successfully, the appellant's contention that the principle of *res judicata* applies in criminal cases. *Scarlett v. State, supra; State v. Coblentz, supra.* See also *Freeman on Judgments,* 5th Ed. Sec. 648; *Hochheimer on Crime and Criminal Procedure,* Sec. 46; *U. S. v. Oppenheimer,* 242 U. S. 85, 37 S. Ct. 68, 61 L. Ed. 161; *Sealfon v. U. S., supra.* For an able discussion of *res judicata* in criminal cases, see *U. S. v. Carlisi,* D. C., 32 Fed. Supp. 479.

The substance of the appellant's contention under his theory of the applicability of *res judicata* is that the evidence used to convict him in the conspiracy case was identical, for all practical purposes, with that used in the trial on the charge of commission of the substantive crimes. Since his claim is factually inaccurate, in that additional evidence to establish the conspiracy was introduced in the second trial, it is unnecessary to consider the legal conclusions which would follow if his premise were sound. In effect under the facts this amounts to a defense of former jeopardy.

It may be observed that the fact that the acts which constituted the crime involved in the first trial constitute another or separate crime, would not prevent evidence of those acts as part of the full proof from being used against the accused in the second trial. For example, in *Gavieres v. U. S.*, 220 U. S. 338, 31 S. Ct. 421, 422, 55 L. Ed. 489, the accused was convicted on the evidence of identical acts and words of two crimes, (a) of being disorderly, and (b) of insulting a public official. After being found guilty of the first crime, he pleaded former jeopardy on the trial of the second, and the Court, in rejecting the plea, said: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." In *Scarlett v. State, supra,* the accused was acquitted of the substantive crime and at the subsequent trial on the conspiracy to commit that crime, the evidence which had been used at the first trial was introduced at the second trial. However, there was additional evidence presented which tended to support the charge of conspiracy. This Court found that the evidence presented at the first trial was: ". . . admitted in evidence merely to supplement other evidence to prove that he had conspired with others to violate the lottery laws from January 1, 1947, to August 20, 1951. We cannot agree with appellant that his acquittal of the charges of violating the lottery laws on three specified days barred the use of evidence obtained on those days to substantiate the charge of conspiracy."

The record makes it plain that a substantial, as well as a significant and pertinent, amount of testimony was presented in the present case to show conspiracy, in addition to that which had been introduced at the first trial. The indictments in the earlier trial named as defendants the appellant and Adams, and also some eighteen others arrested in the 1950 raid. The indictment in the instant case names Rouse and Adams and

others unknown, and there was utilized the testimony of many of the eighteen. The defendant is, of course, manifestly in error in arguing either that conspiracy was charged in the first indictments or proven at the earlier trial. All that was charged or proven in those cases, as is shown clearly in the record, was possession of articles forbidden by the lottery laws, or other substantive lottery offenses. The only evidence produced at the first trial was the testimony of Captain Emerson, who conducted the raid on the premises where the lottery operation was conducted. The evidence in the instant case included, in addition, that of those indicted in 1950, who testified that they had been approached by the appellant and solicited to participate in the lottery operation before they agreed to do so. Some said that their fines, after the first trial, had been paid by the appellant. It was shown that Rouse had taken over a going operation, and legitimate inferences from the payment of the fines are that this was either by pre-arrangement, express or implied, or that operations were to continue after the raid, or both. The appellant said that he was backing the numbers and was "supposed to overlook what he knew about". Furthermore, all testimony as to Willie Adams had been excluded in the first trials. In the trial of the instant case, there was testimony that the police officers, in the presence of the appellant, had taken from Willie Adams in the raided premises keys which opened two boxes there located, containing 17,000 lottery slips, representing some 194,000 numbers on which had been played about $9,000.00.

The appellant relies strongly on *Sealfon v. U. S., supra.* There the accused was accused in two indictments, one charging conspiracy to defraud the United States by use of false invoices and false representations to a Ration Board that certain sales of sugar were made to an exempt agency; the other charging that the accused and one Greenberg had committed the substantive offense of uttering false invoices. The conspiracy indictment was tried first and the accused was acquitted. On the

second charge, he was specifically accused of aiding and abetting Greenberg in the commission of the substantive offense. The appellant pleaded *res judicata* and objected to the use of the evidence which had been used at the first trial, consisting largely of a letter. The Court said [332 U. S. 575, 68 S. Ct. 239] : "It has long been recognized that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. . . Thus, with some exceptions, one may be prosecuted for both crimes. *Ibid.* But *res judicata* may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings . . . and operates to conclude those matters in issue which the verdict determined though the offenses be different. . . Thus the only question in this case is whether the jury's verdict in the conspiracy trial was a determination favorable to petitioner of the facts essential to conviction of the substantive offense." The Court held that the verdict in the conspiracy trial was a determination that the accused had entered into no agreement with Greenberg to defraud and said: "So interpreted, the earlier verdict precludes a later conviction of the substantive offense." In regard to the additional evidence which was introduced in the second trial, the Court said: "It was a second attempt to prove the agreement which at each trial was crucial to the prosecution's case and which was necessarily adjudicated in the former trial to be non-existent. That the prosecution may not do."

The difference between that case and this appeal is manifest. Moreover, it is generally held in the absence of unusual circumstances, such as those found in the *Sealfon* case, that acquittal of the substantive offense is not *res judicata* as to the conspiracy to commit that crime. *Scarlett v. State, supra; Gilpin v. State, supra; U. S. v. De Angelo,* 3 Cir., 138 F. 2d 466; *Woodman v. U. S.,* 5 Cir., 30 F. 2d 482; *Rivera v. U. S.,* 1 Cir., 57 F. 2d 816; *State v. Martin,* 229 Wis. 644, 282 N. W. 107; *Freeman v. U. S.,* 6 Cir., 146 F. 2d 978.

Particularly, it is to be noted that in the *Sealfon* case the one fact essential to a finding of guilt in the second case had been adjudicated in the first case in favor of the accused, so that without a contrary finding in the second case of that particular fact, the accused could not have been found guilty. In the present case, the accused was found guilty as to facts and of acts which constituted merely evidence in support of, but which were not essential to, a finding of the crime of conspiracy. In Maryland a conspiracy is complete with the agreement to do the unlawful act without the necessity of the commission of an overt act in furtherance of the plan.

There is disagreement in the cases as to whether in criminal law *res judicata* may be conclusive against the accused, as well as in his favor. This principle of mutuality is ordinarily essential to the applicability of *res judicata* in civil law. In criminal law, the better reasoned authorities hold that the constitutional right of the accused to have the case against him proven beyond a reasonable doubt at his trial, requires a determination by the trier of the facts in that trial of every fact essential to his guilt, so that matters which have been decided adversely to him by a prior trier of the facts cannot be shown conclusively merely by the prior record. See *U. S. v. De Angelo, supra*; and *U. S. v. Carlisi, supra*. The view that *res judicata* may work against the accused is held in some States. See *State v. Sargood*, 80 Vt. 412, 68 A. 51; *Commonwealth v. Evans*, 101 Mass. 25; and cases in the note in 147 A. L. R. 996. Whatever the correct view may be in this respect need not concern us now, and we do not decide. It is difficult to see how a prior conviction necessarily establishing facts relative and pertinent in a second trial for a companion crime, could ever help an accused, even though under one line of cases it could not, as such, ever hurt him. In any event, the State proved the conspiracy charged in this case, by re-introducing the testimony which was used in the original trial, not as conclusive, but for its

intrinsic weight as part of the whole proof, including the additional testimony to which we have referred.

We think that this case is controlled by the principles recited in *Gilpin v. State, supra,* and relied on in *Scarlett v. State, supra,* to which we adhere, and that on the facts and the law is not to be distinguished from *Pinkerton v. U. S., supra.*

*Judgment affirmed, with costs.*