633 A.2d 902

**Robert Dean BURKETT**

v.

**STATE of Maryland.**

**No. 271, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 6, 1993.

462

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, FISCHER and HARRELL, JJ.

MOYLAN, Judge.

■ In their criminal manifestations, both *res judicata* (former jeopardy) and collateral estoppel (since *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)), are two of the individual members of a larger doctrinal family, known collectively as the law of double jeopardy. *Cook v.*

*State,* 281 Md. 665, 668, 381 A.2d 671 (1978); *Rouse v. State,* 202 Md. 481, 486, 97 A.2d 285 (1953). They are, however, by no means the same. *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486 (1977); *Cook v. State,* 281 Md. 665, 668–669, 381 A.2d 671 (1978); *Klein v. Whitehead,* 40 Md.App. 1, 13–15, 389 A.2d 374, *cert. denied,* 283 Md. 734 (1978).

*Res judicata* looks to a final *judgment* on the merits earlier entered in the same case or same cause and to the *necessary legal consequences* of that *judgment.* In its criminal manifestation as former jeopardy, it looks to a final *judgment* on the merits of guilt or innocence in a trial by the same parties of the "same offense." *State v. Coblentz,* 169 Md. 159, 164–165, 180 A. 266 (1935) ("In criminal cases the difference[s] between a plea of former jeopardy and *res judicata* are so slight as to be hardly distinguishable, and in many criminal cases, where the plea of former jeopardy was made, the courts in discussing the question applied the principles of *res judicata.*") Its effect, when applicable, is one of claim preclusion. *MPC, Inc. v. Kenny,* 279 Md. 29, 32–34, 367 A.2d 486 (1977). A claim that has once been litigated, or that could have been litigated, in the same case by the same parties or their privies, cannot, in the interests of finality and repose, be re-litigated. *Sterling v. Liberty Assn. of Steam & Power Pipe Fitters,* 207 Md. 132, 140, 113 A.2d 389 (1955); *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961). In its criminal/constitutional manifestation as former jeopardy, *res judicata* dictates that, when an individual has once been acquitted (*autrefois acquit*) or once been convicted (*autrefois convict*) of an offense, the State may not thereafter reprosecute that individual for "the same offense." Like *res judicata* generally, it is a *plea in bar,* which is interposed in advance of trial so as to bar the defendant even from being brought to trial in a subsequent and sequential effort to relitigate a matter already legally settled.

Collateral estoppel shares with *res judicata* the requirement that the earlier litigation and the later litigation be between the same parties or their privies. *Klein v. White-*

*head,* 40 Md.App. 1, 15, 389 A.2d 374, *cert. denied,* 283 Md. 734 (1978). And see *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A.2d 100 (1968), for a limited relaxation, not here pertinent, of the mutuality-of-parties requirement. In their double jeopardy manifestations, both collateral estoppel and former jeopardy require that the earlier prosecution have been of the same defendant by the same sovereign.

At that point, however, the two related legal doctrines part company. Collateral estoppel is concerned with the *factual* implications of an earlier litigation of *a different case* (criminally, the trial of *a different offense* ), whereas *res judicata* or former jeopardy is concerned with the *legal* consequences of a judgment entered earlier in *the same case* (criminally, in the trial of *the same offense* ). Collateral estoppel is concerned, therefore, not with the legal consequences of a judgment but only with the *findings of ultimate fact,* when they can be discovered, that necessarily lay behind that judgment. *Res judicata* or former jeopardy, by contrast, is concerned with the *legal consequences* of a judgment regardless of whether the judgment was based on the ultimate factual merits or, as in this case, on the basis of a legal ruling having nothing to do with the ultimate factual merits. Collateral estoppel is concerned only coincidentally with *what* happened legally; its special concern is with *why* it happened in terms of fact finding. *Res judicata* or former jeopardy, by contrast, is concerned with *what* happened legally—with the entering of a final judgment and with the legal consequences of that judgment. It does not matter *why* the judgment was entered in terms of antecedent fact finding. Its claim-preclusive or reprosecution-preclusive effect arises out of its very existence, and there is no necessity to probe for its probable fact-finding basis.

The effect of collateral estoppel, when that doctrine is applicable, is that of issue preclusion (meaning an issue of ultimate fact). A finding of ultimate fact that has once been made in favor of a party cannot later be relitigated adversely to that party, even in the trial of a different case (or different

offense). *Cook v. State,* 281 Md. 665, 669, 381 A.2d 671 (1978) ("[O]nce an issue of ultimate fact has been determined by a final and valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit.") *See also Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Cousins v. State,* 277 Md. 383, 398, 354 A.2d 825 (1976). For purposes of collateral estoppel, the probable fact finding that undergirds a verdict or a judgment must be further scrutinized. The basis for a decision articulated by a judge must be parsed for express fact finding or the trial transcript antecedent to a jury's deliberations must be analyzed for necessarily implied fact finding. As Judge (now Chief Judge) Wilner explained for this Court in *Klein v. Whitehead,* 40 Md.App. 1, 19, 389 A.2d 374, *cert. denied,* 283 Md. 734 (1978):

> For that doctrine to apply, we must conclude that the issues raised in this proceeding were actually litigated in the earlier actions (or that the facts necessary to resolve these issues were adjudicated in those actions).

When such issue preclusion operates in the context of the same case or trial of the same offense, coincidentally, it should technically not even be referred to as *collateral* estoppel. The adjective "collateral" denotes that the estopping influence came into the case in issue from some other outside case, to wit, collaterally. In the context of a single case, the issue-preclusive operation should actually be called "direct estoppel" rather than collateral estoppel as an aspect of true *res judicata,* which is frequently labeled "direct estoppel." For the sake of uniformity, however, we shall follow the almost universal, albeit imprecise, linguistic habit of using the term "collateral estoppel" to embrace the phenomenon of issue preclusion both in its directly estopping and in its truly collaterally estopping contexts.

The present appeal requires us to distinguish meticulously between *res judicata* (in its manifestation as the former acquittal subspecies of former jeopardy), with its exclusive focus on the legal effect of the judgment of acquittal for the

sexual attack in the first degree, and collateral estoppel, with its very different focus on actual or necessarily implied *findings of ultimate fact* made in support of that judgment of acquittal.

The appellant, Robert Dean Burkett, was convicted by a Prince George's County jury of a first-degree sexual offense, a second-degree sexual offense, a third-degree sexual offense, assault with intent to disable, and carrying a dangerous weapon openly with the intent to injure. For sentencing purposes, the convictions for the second-degree sexual offense and the third-degree sexual offense were merged into the conviction for the first-degree sexual offense. On this appeal, the appellant raises the two contentions:

1. that the trial judge erroneously allowed the charges of both first-degree sexual offense and second-degree sexual offense to go to the jury after having granted the appellant's Motion for Judgment of Acquittal as to the first-degree sexual offense; and

2. that the trial judge erred in imposing punishment for the weapon-carrying conviction in addition to the other punishments imposed.

### *The Facts*

The victim of the appellant's attacks was his one-time girlfriend, Cindy Lee Edelen. On August 11, 1992, he was extremely angry at her because he thought she had stolen $100 from his wallet. The ongoing course of first verbal and then physical abuse directed by the appellant at Ms. Edelen began when the two of them were parked at Piscataway Park. Initially, he "smacked her around" and punched her. At one point, he ripped off her clothing and threw it out the car window. Shortly thereafter, the two of them left Piscataway Park and drove to a house on Holly Lane.

After the two arrived at the house on Holly Lane, the appellant preliminarily "punched" Ms. Edelen a number of times and then walked to the kitchen and got a knife. He started swinging the knife at her and threatened to kill her

that night if she did not produce the money. She received one cut above her eye and was also stabbed in the arm. She was sufficiently bloody that she went to the bathroom and got into the bathtub in an effort to clean herself. The appellant then got into the bathtub with her and "proceeded to put the knife up inside [her] vagina." He again admonished Ms. Edelen to produce the money or he would "cut her insides out." After "a couple of minutes of him playing with the knife down there," he "pulled it out" and stabbed Ms. Edelen in the hand. He then left the bathroom. After she left the bathroom, the beating resumed with more punches, kicks, and "stomps."

Sometime later, the appellant, who had left the house for about an hour, came back and started beating Ms. Edelen again. He got another knife on that later occasion and stabbed her in the thigh with it.

### The Hasty Judgment of Acquittal

The appellant was charged, *inter alia*, with both a first-degree sexual offense and a second-degree sexual offense. Both require the commission of a "sexual act." Article 27, § 461(e), defines "Sexual Act":

" '*Sexual act*' *means cunnilingus, fellatio*, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. *Sexual act also means the penetration*, however slight, *by any object into the genital* or anal *opening of another person's body* if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes." (emphasis supplied).

Md.Ann.Code art. 27, § 461(e) (1992).

At the end of the State's case, the appellant moved for a judgment of acquittal. He directed his argument initially at Counts 6 and 7, both of which charged a sexual offense in the first degree. In attempting to come to grips with what a sexual offense in the first degree actually was, the court

committed an irremediable legal error, with all parties contributing it. For a first-degree sexual offense, it is necessary that a *sexual act* be committed and also that it be committed under certain aggravating circumstances. Appellant's counsel erroneously characterized a "sexual act" as consisting of cunnilingus or fellatio and nothing else. The trial judge accepted that limited definition and, accordingly, rendered a judgment of acquittal as to the counts charging a first-degree sexual offense. The State initially took no exception to that definition. The pertinent exchange among all parties consisted simply of:

"Defense Counsel: In this particular case, the sexual act under Section 461(e) is defined as cunnilingus or fellatio, and it is not any of those.

The Court: So as to first degree [sexual] offense, Mr. State's Attorney, unless you have some argument I am not aware of, I am going to have to grant it on that basis.

Mr. Spencer [The Prosecutor]: There was testimony by the victim that he attempted, he wanted to have sex at one point.

The Court: As to Counts 6 and 7, which charges first degree [sexual] offense, motion is granted."

The same mistake would inevitably have led to a similar mistaken verdict as to the second-degree sexual offense if second thoughts had not promptly intervened to put the colloquy back on its proper course.

### The Correction of Course

Within less than a minute, however, both the trial judge and the prosecutor began to have those second thoughts. They decided to turn to the statute itself rather than to rely on appellant's counsel's characterization of the statute:

"The Court: First degree [sexual] offense, 464, says a person is guilty of a sexual offense in the first degree if the person engages in a sexual act.... It is defined in Section 461(e).

Let me make sure—I don't think it's been changed.

Mr. Spencer: Specifically under Subparagraph (e).

The Court: What that says is, sexual assault means cunnilingus, which is not alleged, fellatio, which is not alleged, and anal intercourse. But it does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. We are not dealing with that.

*Sexual acts also means penetration,* however slight, *by any object* into the anal [or genital] area if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes. *That would be where you would rely.*

Mr. Spencer: *Yes.*

The Court: *Tell me why,* Mr. Aarons, why *the State hasn't made a prima facie case on the latter part of that definition."* (emphasis supplied).

### The Legal Effect of the Rethinking

■ On the basis of that revised thinking, the court then belatedly denied the appellant's Motion for Judgment of Acquittal as to a sexual offense in the first degree, as well as denying the motion as to the other charges. The problem is that that correction of course came too late as far as the first-degree offense was concerned. It was the holding of *Brooks v. State,* 299 Md. 146, 151–153, 472 A.2d 981 (1984) that once a judgment of acquittal as to a certain count has actually been rendered, no matter how erroneously, the court cannot subsequently change its mind. *See also Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974); *Daff v. State,* 317 Md. 678, 684, 566 A.2d 120 (1989). Indeed, the State concedes that it was error for the trial court to have denied the Motion for Judgment of Acquittal as to the first-degree sexual offense after once having granted it. Accordingly, that judgment of conviction on that charge will have to be reversed.

## The Possible Further Repercussions

The appellant goes further, however, and urges that the admittedly mistaken judgment of acquittal on the first-degree sexual offense necessarily compels a similarly erroneous verdict with respect to the second-degree sexual offense. We do not agree. When we look, for double jeopardy purposes, at the possibly preclusive effect of one verdict on another, we look at one or the other of two possibly preclusive agents or instrumentalities. The preclusive agent will be either 1) the judgment itself or 2) the necessary fact finding, if it can be discerned, that explains the judgment. The appellant is attempting to combine the two, but they do not combine. It must be one or the other.

When we look to the possibly preclusive effect of a judgment *per se*, we are applying principles of *res judicata* or former jeopardy. We are concerned with the *necessary* legal implications of the judgment in a starkly mechanical fashion, quite aside from any concern with what the judgment-rendering judge or verdict-rendering jury may actually have had in mind. In terms of inevitable legal implications, a judgment of acquittal on a greater inclusive offense does not *necessarily* preclude a subsequent judgment of conviction for a lesser included offense. The converse, of course, is not true. A judgment of acquittal on a lesser included offense would preclude a subsequent conviction on the greater inclusive offense. The logic, however, is one-directional. To fail to prove "a part of the whole" logically precludes a subsequent proving of "the whole." A failure to prove "the whole," however, does not logically preclude a subsequent proving of "a part of the whole."

The acquittal, which could not be revoked, only for a first-degree sexual offense not accompanied by an acquittal for a second-degree sexual offense established, as a matter of law, only that the State had failed to show, and was thereafter precluded from showing, the existence of one of the aggravating factors that might raise a sexual offense from the second degree to the first degree. That, we know, is not what was

going through the mind of the trial judge, but our knowledge of why he did what he did is immaterial. In terms of *res judicata* or former jeopardy, the judgment of acquittal speaks for itself as a matter of law. The precipitous, but binding, judgment of acquittal established only that the aggravating factors attending a sexual act that might raise a sexual offense from the second degree to the first were removed forever from the universe of possible verdicts in this case. The fact that the trial judge, in rendering that judgment, may not even have been considering those aggravating elements is of no consequence. The judgment itself removed them from any further consideration as a matter of law.

Our probing for the probable rationale of the judgment, on the other hand, is an exercise that we indulge only when we enter the very different realm of collateral estoppel. The fact finding that enters into a verdict or a judgment and that may, when we are privy to it, explain that verdict or judgment, is simply not an aspect or a concern of *res judicata* or former jeopardy. It is the concern exclusively of collateral estoppel. When operating in that very different world, our focus changes. We become totally unconcerned with the legal effect of a judgment and confine our interest exclusively to findings of fact on the ultimate merits. *Apostoledes v. State,* 323 Md. 456, 464, 593 A.2d 1117 (1991), referred to collateral estoppel's exclusive focus on fact finding:

> "When a defendant claims that a judge's acquittal on one count has collaterally estopped further prosecution of a related count, the reviewing court may examine the judge's express basis for the ruling in order to determine if the judge resolved in the defendant's favor an ultimate factual issue essential to both counts."

*Ford v. State,* 330 Md. 682, 720, 625 A.2d 984 (1993), reiterated that exclusive focus on what was inevitably found as a matter of fact and not on what was necessarily established as a matter of law:

> "When a reviewing court undertakes this analysis, it must examine the substance of what occurred, not merely its

procedural form.... Our only concern is whether the judgment reflects resolution of factual elements of the charged offenses." (citations omitted).

Operating on the mistaken legal assumption that only fellatio or cunnilingus would constitute a sexual act, the trial judge proceeded to make two undisputed findings of fact on the ultimate merits. He found: 1) that no act of fellatio had been established by the evidence and 2) that no act of cunnilingus had been established by the evidence. The mistaken legal conclusion that nothing but fellatio or cunnilingus would qualify as a sexual act, a mistake that was neither a judgment nor a finding of fact, made it unnecessary for the trial judge even to consider whether a penetration of the vagina by a foreign object had taken place as a matter of fact.

 Under principles of collateral estoppel, the appellant acquired a vested interest in the two findings of ultimate fact that were actually made. The State was thereby precluded from subsequently attempting to relitigate those facts adversely to the appellant. The State, of course, did not attempt to relitigate those facts and had no need to. The ultimate finding of fact that the appellant penetrated the victim's vagina with a knife blade was in no way dependent on a finding that any fellatio or cunnilingus had taken place. No principle of collateral estoppel, therefore, precluded the trial from going forward on the charge of a sexual offense in the second degree.

### The Weapons Charge and Merger

 The appellant's second contention is that under the authority of *Biggus v. State,* 323 Md. 339, 593 A.2d 1060 (1991), and *Eldridge v. State,* 329 Md. 307, 619 A.2d 531 (1993), his conviction for carrying a weapon openly with intent to injure should have merged into one or the other of his other convictions. The appellant makes no argument with respect to the legal sufficiency of the evidence to support the conviction for carrying a knife openly with intent to injure. Thus, any question of whether the picking up, wielding, brandishing,

and actual using of a knife without any antecedent "toting" of it constitutes an instance of an open "wear[ing] or carry[ing]" within the contemplation of § 36 is not before us. *But see, Biggus v. State,* 323 Md. 339, 353, 593 A.2d 1060 (1991), ("[E]mploying or displaying a weapon embraces wearing openly or carrying openly a weapon."). The only issue the appellant raises in this regard is whether the conviction for this offense should have merged into one of the other convictions.

In one sense, of course, a consideration of the merger question at this juncture is premature. Merger, a device to amalgamate separate and legitimate convictions so as to avoid multiple punishment, is a question that does not arise until the time of sentencing. *Biggus v. State,* 323 Md. 339, 343–344, 593 A.2d 1060 (1991). Because there will have to be resentencing in this case, the merger issue is not literally before us. It will almost inevitably arise again before the sentencing judge, however, and, for the guidance of the lower court on remand, we make the following observations.

In this case, two different knives were involved in two distinct assaultive episodes separated from each other by more than an hour. The appellant had actually left the house for an extended period of time before returning to initiate a fresh round of attacks. It was the stabbing of the victim in the thigh with the second knife after the significant time interval that constituted the assault with intent to disable. The conviction for carrying a knife openly with the intent of injuring a person did not arise out of that use of that knife on that occasion. After returning to the house and beating Ms. Edelen again with his fists, the appellant simply went and got the other knife and immediately stabbed his victim in the thigh with it. That was the assault with intent to disable under § 386. No separate weapons charge was brought with respect to it. The conviction for assault with intent to disable, therefore, plays no further part in our consideration of the possible merger of the conviction for carrying the knife openly with intent to injure. Even if it were otherwise, however, it would avail the appellant naught. Utilizing the "required

evidence" or "required elements" test rather than the "actual evidence" test, the Court of Appeals and this Court have consistently held that aggravated assault convictions and weapons offense convictions do not merge. *Brooks v. State,* 284 Md. 416, 418–424, 397 A.2d 596 (1979); *Veney v. State,* 227 Md. 608, 611–615, 177 A.2d 883 (1962); *Bremer v. State,* 18 Md.App. 291, 343–345, 307 A.2d 503, *cert. denied,* 269 Md. 755 (1973); *Thomas v. State,* 3 Md.App. 101, 105, 238 A.2d 558 (1968).

It was the first knife on the first occasion that almost certainly formed the basis for the charge of carrying a knife openly with intent to injure. Indeed, if there was any ambiguity on that score, the appellant made no effort to clarify it by a bill of particulars or otherwise. From the context of the entire trial, it is clear that the weapons charge grew out of the earlier incident. *Biggus v. State,* 323 Md. 339, 345 n. 1, 593 A.2d 1060 (1991).

On that first occasion, after the appellant went to the kitchen and got the first knife, he "started swinging it around and saying if [Ms. Edelen] didn't tell him where the money was or what [she] did with it, he was going to kill [her] that night." He cut her above the eye and then stabbed her in the arm with that knife. When later she was in the bathtub, that was the knife that the appellant prominently displayed and then proceeded to insert into her vagina. That was the knife he wielded menacingly. That was the knife with which he threatened to "cut her insides out." That was the knife that was not only carried but, indeed, brandished openly with the intent to injure. That was the knife, it may reasonably be assumed, with which the appellant violated § 36(a).

With respect to the open carrying and wielding of that knife with the obvious intent to injure, the use of the weapon was not a necessary element in the ultimate conviction for a sexual offense in the second degree. If the appellant had been convicted of a sexual offense in the first degree, on the other hand, and if the use of the knife had been the aggravating factor that elevated his crime to the first degree level, his

contention under the authority of the *Biggus* and *Eldridge* cases would be, to be sure, unassailable. The weapons charge would have merged into the greater offense that entailed, as a necessary element, such use of a weapon. He is now deemed, however, to have been acquitted of that offense. His conviction of a sexual offense in the second degree, by contrast, is not one that was in any way dependent on the use or presence of a weapon. On that lesser charge, a weapon is superfluous. As we will discuss more fully hereinafter, we distinguish the knife in its capacity as the instrumentality of genital penetration from the knife in its very different capacity as a life-threatening weapon. The open wearing of the first knife on the first occasion, therefore, does not merge into the conviction of a sexual offense in the second degree.

The appellant's reliance on *Biggus v. State*, 323 Md. 339, 593 A.2d 1060 (1991) is baffling, for *Biggus* points in the diametrically opposite direction. In *Biggus*, the defendant, as here, was convicted of carrying a knife openly with the intent to injure in violation of § 36(a). Biggus was also convicted of a sexual offense in the third degree under § 464B. Biggus was convicted of that third-degree sexual offense under two separate modalities out of the six alternative modalities by which a third-degree sexual offense can be committed. One of the convictions was under § 464B(a)(1)(i), whereunder "the person [who] engages in sexual contact with another person against the will and without the consent of the other person" also "employs or displays a dangerous or deadly weapon." Alternatively, Biggus was found guilty under § 464B(a)(3), whereunder the offender engages in sexual contact "with another person who is under 14 years of age and the person performing the sexual contact is 4 or more years older than the victim."

The first modality, under § 464B(a)(1)(i), is, for present purposes, the precise analogue to § 464(a)(1)(i), which provides that it is a sexual offense in the first degree when a nonconsensual sexual act is compounded by the aggravating factor that the offender "employs or displays a dangerous or deadly weapon." That is why we say that the weapons

conviction would have merged into the conviction for the first-degree sexual offense, had that conviction remained in the case. The *Biggus* opinion pointed out that if the conviction for the third-degree sexual offense in that case had depended, necessarily, upon that aggravating modality of displaying a weapon, there would also have been a necessary merger there. Judge Eldridge pointed out, 323 Md. at 352–353, 593 A.2d 1060:

> "If Biggus's third degree sexual offense conviction had been based solely on count one, charging an unlawful sexual contact 'by employing and displaying a dangerous and deadly weapon,' . . . his merger argument would be persuasive. It would appear that, under the required evidence test, a § 36(a) conviction for wearing or carrying a dangerous or deadly weapon openly with the intent or purpose of unlawfully injuring any person would merge into a § 464B(a)(1)(i) sexual offense conviction. The relevant elements of the § 36(a) offense are: (1) wearing or carrying openly, (2) any dangerous or deadly weapon of any kind whatsoever, (3) with the intent or purpose of injuring any person in an unlawful manner. All of these elements seem to be included in the § 464B(a)(1)(i) offense. Section 464B(a)(1)(i)'s requirement of employing or displaying a weapon embraces wearing openly or carrying openly a weapon. The 'dangerous or deadly weapon' element of § 464B(a)(1)(i) is essentially the same as the 'dangerous or deadly weapon' element within the meaning of § 36(a)." (footnotes omitted).

In our case, the conviction for a first-degree sexual offense, necessarily involving the employment or display of a dangerous weapon as a required aggravating element, has been reversed and no longer presents any merger problem. In the *Biggus* case, the theory of conviction for the third-degree sexual offense, also necessarily involving the employment or display of a dangerous weapon as a required aggravating element, was not, as in our case, reversed and totally removed from any further consideration. It was simply reduced in stature, losing its exclusivity and relegated to one of two alternative theories for conviction. Even that lesser diminu-

tion, however, was enough to vitiate any merger requirement in the *Biggus* case. The alternative theory of conviction did not involve that aggravating factor of displaying or employing a weapon. Under that alternative theory, the use of a weapon was not a required element, notwithstanding the fact that a weapon was actually displayed. The Court of Appeals explained, 323 Md. at 354–355, 593 A.2d 1060:

> "Under the required evidence test, the § 36(a) weapon offense clearly would not merge into a third degree sexual offense based on § 464(a)(3). Each has entirely distinct elements. Wearing or carrying openly a deadly or dangerous weapon, which is critical to the § 36(a) offense, is in no manner an element of a third degree sexual offense under § 464B(a)(3). Sexual contact and the prescribed age factors, however, are the elements of the § 464B(a)(3) offense not present in the § 36(a) crime. As each has distinct elements, there would be no merger under the required evidence test."

*Eldridge v. State,* 329 Md. 307, 619 A.2d 531 (1993), reached the same result. In that case, the defendant had been convicted 1) of robbery with a dangerous and deadly weapon in contravention of § 488 and 2) of carrying a weapon in contravention of § 36(a). Because the use of a weapon had already entered into the equation as an aggravating factor under the armed robbery conviction itself, any further aggravation involving the use of the weapon was redundant and the § 36(a) conviction was ordered to be merged into the conviction for armed robbery. The clear implication of the *Eldridge* case, however, was that if the robbery conviction had been for simple robbery alone, then the aggravating factor represented by the gun would not yet be in the equation and no merger of the § 36(a) conviction would have been required.

*A fortiori,* the conviction now before us for a simple (unaggravated) sexual offense in the second degree does not involve, as a necessary element, the aggravating presence of a weapon. The § 36(a) conviction is not, therefore, redundant, and merger is not compelled.

 The appellant, as a last-ditch effort, argues that even if merger is not mandated by the "required evidence" or "required elements" test, it may nonetheless be called for by the so-called "rule of lenity." With respect to any applicability the rule of lenity might have when dealing with a weapons offense under § 36(a), the Court of Appeals has laid that ghost to rest in the *Biggus* case. Judge Eldridge stated unequivocally, 323 Md. at 356–357, 593 A.2d 1060:

[T]he Legislature in § 36(a), after specifying the range of imprisonment for a violation, stated:

"[I]n case of conviction, if it shall appear from the evidence that such weapon was carried, concealed or openly, with the deliberate purpose of injuring the person or destroying the life of another, *the court shall impose the highest sentence of imprisonment prescribed.*"

*This expresses a sentiment somewhat inconsistent with merger under the rule of lenity.*

Furthermore, Maryland cases have uniformly refused to merge § 36(a) convictions into convictions for other offenses where such merger was not mandated by the required evidence test. *Brooks v. State, supra,* 284 Md. at 422–424, 397 A.2d at 599–600; *Nance v. State,* 77 Md.App. 259, 267, 549 A.2d 1182, 1185–1186 (1988), *cert. denied,* 314 Md. 629, 552 A.2d 894 (1989); *Selby v. State,* 76 Md.App. 201, 218–219, 544 A.2d 14, 23 (1988), *aff'd,* 319 Md. 174, 571 A.2d 1236 (1990); *Walker v. State, supra,* 53 Md.App. [171] at 204, 452 A.2d [1234] at 1251 [1982]. The General Assembly has taken no action to change the result of those decisions.

A primary purpose of statutes proscribing the carrying or employment of dangerous or deadly weapons is to discourage their use in criminal activity. *Where the underlying criminal activity does not itself necessarily involve the carrying or use of dangerous or deadly weapon, the carrying or use of a dangerous or deadly weapon, in violation of a statute like § 36(a), is an aggravating factor warranting punishment in addition to the punishment imposed for the underlying criminal activity.* When someone commits a crime such as that proscribed by Art. 27, § 464B(a)(3), and

also employs a dangerous or deadly weapon in violation of Art. 27, § 36(a), there is no unfairness associated with the imposition of separate sentences for each offense. (emphasis supplied).

 There remains to be noted one bizarre factual twist, which, at first glance, might seem to be a problem but, under further analysis, presents no problem at all. As a required element, the knife, as a weapon, played no part in the conviction for a sexual offense in the second degree. As an item of actual evidence, on the other hand, it did coincidentally play a role. The knife was, indeed, the foreign object used to penetrate the vagina of the victim.

Its utilization for that purpose, however, did not implicate its character as a weapon. It was simply a foreign object. As such, it would have made no difference whether the victim was penetrated with the knife blade or the knife handle. Its coincidental employment in that nonweapon capacity has, therefore, no doctrinal significance. In analyzing the *corpus delicti* of the second-degree sexual offense, no weapon figured in any way as a necessary element of the offense. It would only be if the knife, as a weapon, had played a necessary role as a required and aggravating element of the sexual offense that the conviction under § 36(a) would be reduced to redundancy and required to merge. That was not the case.

We do note, *sua sponte,* that the maximum penalty for a violation of § 36 is three years imprisonment. The five-year term of imprisonment imposed on the appellant for his conviction for that offense was, therefore, illegal. Accordingly, we shall vacate the sentence on this charge and remand for resentencing within the legal limit.

*JUDGMENT OF CONVICTION FOR A SEXUAL OFFENSE IN THE FIRST DEGREE REVERSED; OTHER JUDGMENTS OF CONVICTION AFFIRMED; CASE REMANDED FOR RESENTENCING ON CONVICTION FOR A SEXUAL OFFENSE IN THE SECOND DEGREE; SENTENCE FOR VIOLATING ART. 27, § 36 VACATED AND CASE REMANDED FOR RESENTENCING; COSTS TO*

*BE DIVIDED EQUALLY BETWEEN APPELLANT AND PRINCE GEORGE'S COUNTY.*