# BRUCE ALTON COOK *v.* STATE OF MARYLAND

[No. 61, September Term, 1977.]

*Decided January 6, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court. ELDRIDGE, J., concurs in the result and filed a concurring opinion at page 675 *infra.*

We consider in this appeal the doctrines of collateral estoppel and res judicata as applied to criminal proceedings. After a non-jury trial in the Circuit Court for Harford County (Close, J.), appellant was convicted of armed robbery with a dangerous and deadly weapon for which he was sentenced to a 14-year term. The Court of Special Appeals upheld the conviction in *Cook v. State,* 35 Md. App. 430, 371 A. 2d 433 (1977). We then granted certiorari and for reasons that follow, we affirm.

On June 18th and 19th, 1974, appellant, along with co-defendants, Roger Wolfe, Roland Bauer and Diane Jorgenson, was tried in the Circuit Court for Baltimore County (Turnbull, J.) for his role in two armed robberies which took place in Essex, Maryland on November 8th and 9th, 1973. Immediately after the jury had been sworn, defense counsel objected to the introduction of various weapons and articles of stolen property that had been obtained by police

on November 16, 1973, during a warrantless search of a Baltimore City apartment occupied by co-defendant Roger Wolfe. Having found that the police officers had entered Wolfe's apartment illegally, thereby invalidating the ensuing seizure of the contraband, Judge Turnbull then granted appellant's motion for a mistrial, stating that it would be necessary "to start all over again when a new jury" was impaneled the following month. No further explanation was given for the declaration of the mistrial; nor does the record indicate that appellant was ever retried on the Baltimore County charges.

In April, 1974, some two months before the commencement of appellant's first trial, a Harford County grand jury had indicted appellant on charges stemming from the armed robbery of a Harford County man on November 14, 1973. Appellant's non-jury trial on these latter charges commenced on September 25, 1974. As part of its case-in-chief, the State sought to introduce into evidence two handguns which had been among the items seized by Baltimore City police in the 1973 raid on Wolfe's apartment. Once again appellant moved to suppress this evidence on grounds identical to those asserted in the previous Baltimore County trial. In addition, appellant contended that inasmuch as the matter had been conclusively determined by Judge Turnbull in the earlier prosecution, the State was collaterally estopped and otherwise precluded from relitigating the legality of the search.[1] Rejecting these contentions, Judge Close denied appellant's motion to suppress and proceeded to find him guilty of robbery with a dangerous and deadly weapon. Appellant thereupon appealed to the Court of Special Appeals

---

1. Appellant also claimed, as he does here, that the doctrine of res judicata, or direct estoppel, barred reconsideration of the search and seizure issue on the second proceeding. The Court of Special Appeals rejected this theory on the grounds that res judicata cannot apply where the subject matter of the second trial differs from that of the original action. It reasoned that since the Baltimore and Harford County prosecutions arose out of separate and apparently unrelated incidents, the identity of subject matter requirement had not been met, thereby preventing appellant from invoking the protection of the direct estoppel doctrine. 35 Md. App. at 439. Because we have determined that the Baltimore County suppression ruling was not a final judgment and because a final adjudication is a prerequisite for both the direct and collateral estoppel doctrines, we deem it unnecessary to decide which doctrine technically applies to the facts of this case.

which affirmed, holding in part that neither collateral estoppel nor res judicata prevented a second inquiry into the validity of the November 16th search, the legality of which the court then proceeded to uphold. We do not reach the latter issue, however, since our grant of certiorari was limited solely to consideration of the applicability of res judicata and collateral estoppel.

It is beyond question that the closely related doctrines of res judicata and collateral estoppel apply to criminal as well as civil causes. *Rouse v. State,* 202 Md. 481, 486, 97 A. 2d 285, *cert. denied,* 346 U. S. 865 (1953); *State v. Coblentz,* 169 Md. 159, 164-66, 180 A. 266 (1935); *see also United States v. Oppenheimer,* 242 U. S. 85, 87, 37 S. Ct. 68, 61 L. Ed. 161 (1916). *See generally* Annot., 9 A.L.R.3d 203 (1966).[2] Suffice it to say that under the doctrine of res judicata, sometimes known as direct estoppel, a final and valid judgment rendered in one proceeding between two parties operates as a bar in a second proceeding between them on all matters that have been or could have been decided in the original litigation, where the second proceeding involves the same subject matter as the first cause of action. *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A. 2d 486 (1977); *Sterling v. Local 438,* 207 Md. 132, 140-41, 113 A. 2d 389, *cert. denied,* 350 U. S. 875 (1955). On the other hand, where a prior judgment is relied upon to preclude a second adjudication of some previously determined factual or legal issue in subsequent litigation between the same parties concerning a different cause of action, courts apply the doctrine of collateral estoppel. *MPC, Inc. v. Kenny,*

2. When applied to criminal cases, both res judicata and collateral estoppel acquire a constitutional dimension by reason of the Double Jeopardy Clause of the Fifth Amendment, made applicable to the states as a result of Benton v. Maryland, 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969). Ashe v. Swenson, 397 U. S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970); *see* Cousins v. State, 277 Md. 383, 388, 354 A. 2d 825 (1976); Bennett v. State, 229 Md. 208, 212, 182 A. 2d 815, 4 A.L.R.3d 862 (1962). Appellant alleges no double jeopardy violation in the present case, presumably because the prior Baltimore County prosecution terminated in a mistrial granted at appellant's insistence. It is well-settled that where the defendant requests and receives a mistrial, the double jeopardy clause will generally not bar retrial on the same offense, absent a showing of bad faith or other misconduct on the part of the prosecutor. Lee v. United States, 432 U. S. 23, 33-34, 97 S. Ct. 2141, 53 L.Ed.2d 80 (1977); United States v. Dinitz, 424 U. S. 600, 607-08, 96 S. Ct. 1075, 47 L.Ed.2d 267 (1976); *see generally* Jourdan v. State, 275 Md. 495, 508-10, 341 A. 2d 388 (1975).

279 Md. at 32-33. *See also Wash. Sub. San. Comm'n v. TKU Associates,* 281 Md. 1, 18-19, 376 A. 2d 505 (1977). Under this latter doctrine, once an issue of ultimate fact has been determined by a final and valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson,* 397 U. S. 436, 443, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970); *Cousins v. State,* 277 Md. 383, 398, 354 A. 2d 825, *cert. denied,* 429 U. S. 1027 (1976).

In this case, neither collateral estoppel nor res judicata comes into play unless the prior suppression ruling, relied upon as a bar to reconsideration of the search and seizure issue in the Harford County prosecution, was either itself a final judgment or was rendered in the course of a proceeding which culminated in the rendition of a final judgment. In short, under the final adjudication rule, res judicata and collateral estoppel do not apply absent some prior final determination of law or fact. *Surrey Inn, Inc. v. Jennings,* 215 Md. 446, 454-55, 138 A. 2d 658 (1958); *accord, Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 156-57, 297 A. 2d 721 (1972). *And see,* Restatement (Second) of Judgments § 68, comment k at 16 (Tent. Draft No. 4, 1977). This requirement of finality is based upon the common sense proposition that conclusive effect should only be accorded a judgment which is "firm and stable . . ., the last word of the rendering court." Restatement (Second) of Judgments § 41, comment a at 2 (Tent. Draft No. 1, 1973). This rationale is particularly compelling in criminal cases, where application of res judicata or collateral estoppel may have the effect of barring prosecution of the defendant altogether.

Finality is a concept which does not lend itself to concise delineation. Although this Court has never attempted a precise definition of the finality rule, as it relates to the doctrines of res judicata and collateral estoppel, we have indicated that the standard employed in such cases resembles that used to assess the finality of judgments for purposes of appellate review. *See Surrey Inn, Inc. v. Jennings,* 215 Md. at 455; Restatement (Second) of Judgments § 41, comment b at 2-3 (Tent. Draft No. 1, 1973). In our recent decision in *United States Fire Ins. Co. v. Schwartz,* 280 Md. 518, 374 A.

2d 896 (1977), we stated that, as a general proposition, a judgment is final, and hence appealable, when it finally settles some disputed right or interest of the parties:

> "Otherwise stated, the judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding" *Id.* at 521.

*Accord, Warren v. State,* 281 Md. 179, 183, 377 A. 2d 1169 (1977).

Given these basic principles, we think it plain that the question of the admissibility of the weapons seized in the raid on Wolfe's Baltimore City apartment was not finally adjudicated at appellant's initial trial. As a preliminary matter, we address appellant's contention that the suppression order itself was a final adjudication. We need not dwell at length on this point, for it is widely agreed that exclusionary orders resemble mere evidentiary rulings, interlocutory in nature and hence are intrinsically non-final. *McGrath v. Gold,* 36 N.Y.2d 406, 369 N.Y.S.2d 62, 330 N.E.2d 35, 38 (1975) (suppression order interlocutory in nature and therefore not binding on state in subsequent prosecution of same defendant in different county). *See Lohss and Sprenkle v. State,* 272 Md. 113, 117, 321 A. 2d 534 (1974). *See also DiBella v. United States,* 369 U. S. 121, 131-32, 82 S. Ct. 654, 7 L.Ed.2d 614 (1962); *Cogen v. United States,* 278 U. S. 221, 227, 49 S. Ct. 118, 73 L. Ed. 275 (1929).

In our view, a ruling at trial that excludes illegally acquired evidence cannot be examined out of context. Such a ruling is typically only one of many made during the course of a trial and does not become final until the proceeding as a whole is concluded. Thus, whether or not a suppression ruling will ultimately preclude relitigation of the legality of the search and seizure at a subsequent proceeding depends on whether the prior proceeding, taken as a whole, can be said to have concluded in the rendition of a final judgment.

Here, appellant's Baltimore County trial ended in the declaration of a mistrial which he himself had sought. Such

a mistrial is patently not a final determination. The granting of appellant's motion for mistrial was tantamount to a holding that there had been no trial at all. *United States v. Kwitek,* 433 F. 2d 18, 19 (7th Cir. 1970); *Newark Shopping Center v. Morris Skilken & Co.,* 5 Ohio App.2d 241, 214 N.E.2d 674, 674-75 (1964). Once a mistrial has been declared, all questions of fact remain to be decided and may be litigated until a final valid determination has been reached. *Howard v. State,* 561 P. 2d 125, 133-34 (Okla. Cr. App. 1977).

Quite clearly, then, a mistrial does not necessarily conclude the rights and interests of the parties, nor does it deny either the accused or the State the opportunity to litigate directly their rights on retrial of the cause. It was so held in *People v. Bryan,* 3 Cal. App.3d 327, 83 Cal. Rptr. 291, 299 (1970), where the defendant had been successful in securing a ruling from the initial trial court striking testimony of prior Pennsylvania convictions on the grounds that they had been illegally obtained. A mistrial was declared. Later at his retrial, defendant sought to prevent the state from relitigating the admissibility of the prior convictions, claiming the protection of the doctrine of res judicata. The second trial court rejected defendant's argument and overruled his motion to suppress. In affirming the denial of the motion to suppress, the court stated:

> "In any event, the order granting the mistrial prevented the rendition of a final judgment at the first trial. Under these circumstances, we are of the opinion that the order striking the prior convictions, made at the first trial, was not res judicata as to their validity and was not binding on the trial court at the second trial." *Id.* at 299.

*See also People v. Bracamonte,* 15 Cal. 3d 394, 124 Cal. Rptr. 528, 540 P. 2d 624, 627 (1975); *McGrath v. Gold,* 330 N.E.2d at 38. We conclude that the declaration of a mistrial in appellant's Baltimore County trial prevented the suppression ruling from becoming final, and thus conclusive on the issue of admissibility in the Harford County prosecution.

Our holding here comports with the policies that underlie

the doctrines of collateral estoppel and res judicata in the criminal law context. *See generally United States ex rel. Di Giangiemo v. Regan,* 528 F. 2d 1262, 1269 (2d Cir. 1975), *cert. denied,* 426 U. S. 950 (1976); Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions,* 74 Harv. L. Rev. 1, 31-33 (1960). First, there is no danger of prosecutorial harassment under the facts of this case, since the granting of the mistrial would not have prevented the State from subjecting appellant to a full trial on the Baltimore County charges. Thus, relitigation of the search and seizure question in Harford County cannot be considered an attempt on the part of the State to evade an earlier adverse ruling at the defendant's expense. Secondly, while the suppression hearing at the second trial did, to a limited extent, duplicate prior efforts of the Baltimore County Circuit Court, it can hardly be said that this hearing amounted to a significant waste of judicial resources. The Harford County proceeding arose out of events entirely unrelated to the circumstances which gave rise to the Baltimore County prosecution. Appellant would thus have been tried in Harford County in any event, regardless of the admissibility of the handguns, which was at best an ancillary matter. Finally, appellant would not have been justified in placing any reliance on the evidentiary ruling made by the Baltimore County trial judge, since the effect of the mistrial, as we have said, was to deprive the suppression order of all binding effect insofar as subsequent prosecutions were concerned.

Of the handful of federal and out-of-state decisions cited by appellant, only *People v. Williams,* 59 Ill. 2d 557, 322 N.E.2d 461 (1975), merits any discussion here. In that case, the defendant was indicted for burglary and robbery. In a second and separate indictment, the defendant was charged with similar offenses committed on the previous day. At a pre-trial hearing on the first indictment, the trial judge granted defendant's motion to suppress certain inculpatory statements allegedly adopted by the defendant at a post-arrest interrogation. This indictment was then dismissed with leave to reinstate. The State elected not to seek review of this otherwise appealable order, choosing instead to

relitigate the validity of the confession at defendant's non-jury trial on the second indictment. At the second proceeding the State was successful in having the confession admitted over defendant's objection that the matter had been conclusively settled in his favor in the earlier prosecution. On appeal, the Illinois Supreme Court reversed the denial of the motion to suppress in the second trial, holding that collateral estoppel foreclosed inquiry into the admissibility of the confession by the second tribunal. In so ruling, the court stated that the granting of defendant's motion to suppress in the first trial was a final order for purposes of collateral estoppel. *Id.* at 463.

At first blush *Williams* would seem to support appellant's position here. Nevertheless, the two cases are clearly distinguishable. Of critical importance is the fact that the suppression order in *Williams* was immediately appealable by the state under Illinois Supreme Court Rule 604, which permitted the state to appeal from orders suppressing evidence in criminal prosecutions. That rule was promulgated pursuant to a provision of the Illinois state constitution granting the state supreme court power "to provide by rule for appeals to the Appellate Court from *other than final judgments* of the [trial court]." (emphasis added). *People v. Taylor,* 50 Ill. 2d 136, 277 N.E.2d 878, 881 (1972). It is thus clear that but for Rule 604, suppression orders would not be deemed final adjudications for purposes of appellate review in Illinois.

The availability of immediate appeal from the grant of suppression orders has led the Illinois courts to hold consistently that the state's failure to exercise this extraordinary right of review will, as a matter of judicial policy, preclude the state from relitigating evidentiary exclusion orders in subsequent proceedings against the same defendant for the same offense. *People v. Taylor,* 277 N.E.2d at 881; *see People v. Heil,* 49 Ill. App.3d 55, 7 Ill. Dec. 675, 364 N.E.2d 966, 970 (1977). Thus, the effect of the holding in *Williams* was simply to apply this special issue-preclusion rule to bar the state from seeking readjudication of the suppression issue in a second proceeding against the same

defendant, but for a different offense. It is apparent that when viewed in this context, the holding in *Williams* as to the finality of the prior suppression order, 322 N.E.2d at 463, was predicated upon the fact that the state there had a right to appeal the interlocutory suppression order but opted not to exercise that right, thereby rendering the prior determination sufficiently final to warrant invocation of the collateral estoppel doctrine. It is therefore the availability of appellate review in *Williams,* coupled with the failure of the state to pursue this avenue, that distinguishes that case from the matter before us, where neither the Baltimore County suppression order nor the subsequent declaration of a mistrial was subject to immediate review by the State. *Lohss and Sprenkle v. State,* 272 Md. at 117 (state has no right of appeal from granting of motion to suppress); *United States v. Kaufman,* 311 F. 2d 695, 698-99 (2d Cir. 1963) (prosecution may not appeal from declaration of mistrial).

In so distinguishing *People v. Williams,* we are quick to point out that the appealability of an order or judgment is not the *sine qua non* of finality for purposes of collateral estoppel in criminal cases. We recognize, of course, that constitutional limitations, and in particular the Double Jeopardy Clause of the Federal Constitution, prohibit the prosecution from appealing trial court determinations in favor of the accused in certain instances. In such cases, the Constitution may well require that collateral estoppel effect be accorded a prior adjudication despite the fact that the state is constitutionally barred from an appeal. *See Ashe v. Swenson,* 397 U. S. at 443; *Cousins v. State,* 277 Md. at 398.

Nevertheless, to the extent that double jeopardy or statutory limitations do not apply, appealability is most certainly a relevant factor in measuring finality for purposes of collateral estoppel. *United States ex rel. Di Giangiemo v. Regan,* 528 F. 2d at 1265; Restatement (Second) of Judgments § 41, comment g at 7 (Tent. Draft No. 1, 1973). *See also Watts v. United States,* 402 F. 2d 676, 685 (D.C. Cir. 1968) (per Burger, J.), *rev'd on other grounds,* 394 U. S. 705, 89 S. Ct. 1399, 22 L.Ed.2d 664 (1969) (nonappealable pretrial motions not proper subjects for collateral estoppel); *State v. Stahley,*

7 Or. App. 464, 492 P. 2d 295, 297 (1971) (nonappealable suppression order not binding on state in subsequent prosecution of same defendant). *And see Rodriguez v. Beame,* 423 F. Supp. 906, 908 (S.D. N.Y. 1976) (decision rendered on suppression motion final for purposes of collateral estoppel if followed by judgment of conviction). Considerations of fairness would seem to require that a prior determination of fact or mixed law and fact should not normally be treated as final, and hence binding, in a subsequent proceeding against a particular party, where the party against whom preclusion is sought was denied the opportunity, as a matter of law, to have the disputed issue decided by an appellate court on direct review.

In sum, we hold here that the order suppressing illegally seized evidence rendered at a trial terminating in the declaration of a mistrial at appellant's request was not sufficiently final as to trigger the operation of either collateral estoppel or res judicata and thereby preclude the State from relitigating the issue at appellant's subsequent trial in Harford County for unrelated offenses.

*Judgment affirmed; appellant to pay costs.*

*Eldridge, J., concurring:*

I agree with the judgment reached by the majority in this case. However, the majority's concern with the finality of judgments for the purpose of appealability seems to me to lend needless confusion to what is, in fact, a relatively simple case.

The ruling on Cook's motion to suppress in the Baltimore County case was, according to Maryland law, subject to revision during the further proceedings in that case. It was not, therefore, a final determination on the issue when originally made. Since the Baltimore County trial ended in a mistrial requested by Cook, and the request was not caused by bad faith conduct of the judge or prosecutor, Cook was subject to retrial and the proceedings never came to a

termination which would lend the suppression ruling any degree of conclusiveness. *See United States v. Dinitz,* 424 U. S. 600, 96 S. Ct. 1075, 47 L.Ed.2d 267 (1976); *Jourdan v. State,* 275 Md. 495, 508, 341 A. 2d 388 (1975). Given the circumstances under which the mistrial was granted, the State was able to retry Cook and could be expected to relitigate the suppression motion. Consequently, the State was not estopped from relitigating the motion to suppress in the Harford County proceedings. This is all that need be said.

Nevertheless, additional considerations are incorporated into the majority opinion. The majority takes the position that "appealability is most certainly a relevant factor in measuring finality for purposes of collateral estoppel" in criminal cases. This emphasis on appealability is both irrelevant and confusing.

The rationale underlying the final judgment rule for the purpose of appeals, as we have said many times, is that piecemeal appeals disrupt trial proceedings, congest the trial courts, burden the appellate courts, and unduly increase the time and expense of litigation. The final judgment rule in the context of appeals allows the trial court to pass upon all aspects of a case in uninterrupted proceedings, and consolidates all assignments of error into a single appeal. That is, the use of the final judgment rule in appeals is meant to delay the raising of an issue until a more appropriate time.

The doctrine of collateral estoppel or issue preclusion, however, is employed to *prevent,* not merely delay, the raising of an issue which has been fully and finally determined in a prior proceeding. Whether an issue in a prior criminal proceeding has been finally determined has no necessary or intrinsic connection with whether, in addition, that prior criminal proceeding happens to be in the proper posture for appellate review.

Only rarely does the State have the right of appeal in a criminal case. In fact, criminal proceedings often end under circumstances where appeals will not lie with either the defendant or the State. In addition to the obvious situation of an acquittal, such circumstances include the sua sponte mistrial without manifest necessity, the mistrial granted due

to prosecutorial bad faith, the nolle pros after jeopardy attaches, probation without judgment under Art. 27, § 292 (b), etc. Yet these cases would obviously seem to possess the conclusiveness requisite to sustain a claim of collateral estoppel.

It seems to me important that the task of a trial court in resolving a collateral estoppel claim in a criminal case, namely assessing whether a conclusive resolution of an issue has been made in another proceeding, not be clouded by reference to the extraneous matter of whether, in addition, the previous determination or proceeding is appealable.[1]

Consistent with these considerations, I would not distinguish *People v. Williams,* 59 Ill. 2d 557, 322 N.E.2d 461 (1975), as the majority does in part, on the *fact* of the appealability of the suppression order. Instead, the pertinent distinction is the *consequence* of that appealability. Illinois courts hold that the state, if it fails to appeal from a suppression order, may not relitigate this order either in the trial court or in any subsequent proceeding against the defendant for the same offense. This finality is not, of course, a necessary consequence of the appealability of the order but is merely a matter of policy.[2] The legislature could, if it so

---

1. In support of its claim that appealability is an important factor in measuring finality for purposes of collateral estoppel in criminal cases, the majority refers to Watts v. United States, 402 F. 2d 676 (D.C. Cir. 1968). Chief Justice Burger, then a circuit judge, stated for the court (402 F. 2d at 685 n. 22):

> "The Government argues that the suppression order was not a final order because it was not appealable .... *But appealability is not the touchstone of a final order for these purposes.* The most frequent type of order that leads to a claim of . . . collateral estoppel is a judgment of acquittal . . . and that is not subject to appeal by the Government. However, judgments of acquittal and even dismissals of cases have a degree of finality that is absent when, as here, the prior case is terminated by the Government's nolle prosequi." (Emphasis supplied.)

How the majority manages to construe this case as supporting its assertion is unclear to me.

2. Compare, for example, the Maryland practice which allows a defendant to take an appeal from a pre-trial order denying a motion to dismiss on the ground of double jeopardy, Neal v. State, 272 Md. 323, 322 A. 2d 887 (1974); Cornish v. State, 272 Md. 312, 316, 322 A. 2d 880 (1974). However, where the defendant does not exercise this right of immediate appeal but waits until

chose, provide for the state to appeal suppression orders but further provide that failure to take an appeal does not prohibit the state from relitigating the suppression order in certain circumstances, *e.g.,* after a mistrial requested by the defendant where all issues would normally be relitigated. In this event, even though appealable, the order would not be conclusive for purposes of collateral estoppel since there would have been no final determination of the issue in the original proceedings.

The majority, invoking "considerations of fairness," suggests that collateral estoppel should not apply when a "party" against whom issue preclusion is sought could not obtain appellate review of the prior judgment by an appellate court.[3] However, this suggestion has no application whatsoever in the consideration of issue preclusion in criminal cases. Collateral estoppel does not apply against a criminal defendant. As Judge Hammond stated for the Court in *Rouse v. State,* 202 Md. 481, 490, 97 A. 2d 285 (1953):

> "In criminal law, the better reasoned authorities hold that the constitutional right of the accused to have the case against him proven beyond a reasonable doubt at his trial, requires a determination by the trier of the facts in that trial of every fact essential to his guilt, so that matters which have been decided adversely to him by a prior trier of the facts cannot be shown conclusively merely by the prior record."

Consequently, the majority's suggestion amounts to the proposition that the State should not be collaterally estopped unless it can raise the issue on appeal. However, the State can almost never take an appeal in criminal cases. And in those rare instances when the State can appeal, the issues

---

after trial, raising the double jeopardy issue in an appeal from the final judgment, this Court will consider the double jeopardy issue then. *See, e.g.,* Thomas v. State, 277 Md. 257, 258-260, 353 A. 2d 240 (1976).

3. This is a position which has been urged in civil cases. Restatement (Second) of Judgments, Part I, Chapter 3, *Former Adjudication: The Effects of Judicial Judgments Rendered in Civil Actions,* § 68.1(a) (Tent. Draft No. 4, 1977).

which it can raise may be limited. *Cf. Hayward v. State,* 278 Md. 654, 366 A. 2d 52 (1976).

In sum, appealability should not be a relevant factor in determining when collateral estoppel applies in criminal cases.