474 A.2d 530

**Robert William MATTHEWS**

v.

**STATE of Maryland.**

**No. 693, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

May 7, 1984.

J.B. Stevens, Jr., Annapolis, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., and J. Donald Braden, State's Atty. for Queen Anne's County, on the brief, for appellee.

Argued before WILNER, WEANT and GARRITY, JJ.

WEANT, Judge.

Robert William Matthews was convicted by a Queen Anne's County jury of two violations of the Controlled Dangerous Substances laws, to wit, possession of marijuana in a sufficient quantity to indicate an intent to distribute, possession of controlled paraphernalia, and maintaining a common nuisance. Matthews contends that evidence seized pursuant to a search warrant executed on his vehicle and place of business, a restaurant-bar known as the "Portside Inn," should have been suppressed because the warrant was not supported by probable cause. Initially, the lower court agreed with Matthews and suppressed the evidence. However, after hearing the State's Motion for Reconsideration, it reversed its position, upheld the warrant and admitted the evidence.

Aggrieved by the lower court's change of heart, Matthews appeals, presenting three issues for our consideration:

I. Whether the Court erred in refusing to grant the Appellant's Motion for Suppression and Exclusion of Property Seized Pursuant to the Search warrant.

II. Whether the Court erred in granting the State's Motion for Reconsideration after granting the Appellant's Motion for Suppression.

III. Whether all evidence seized in execution of the search warrant should have been excluded as a result of

the State's failure to make the return to the issuing judge within five days as provided by Maryland Rule 780e.

## I.

Our independent review of the record, *Walker v. State*, 12 Md.App. 684, 691–95, 280 A.2d 260, 265–66 (1971), persuades us that the lower court's *initial* finding that the warrant was not supported by probable cause was incorrect. The evidence seized should not have been suppressed.

"It is axiomatic that in analyzing the probable cause for the issuance of a search warrant, we are confined to the four corners of the affidavit itself. [Citations omitted]." *Hignut v. State*, 17 Md.App. 399, 407–08, 303 A.2d 173, 177 (1973). Keeping in mind that "[a] grudging or negative attitude ... will tend to discourage police officers from submitting their evidence to a judicial officer before action," *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), "we read possibly ambiguous language with an eye toward upholding the warrant rather than striking it down." *Hignut, supra* [17 Md.App.] at 413, 303 A.2d at 180.

In the wake of *Illinois v. Gates*, 462 U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the task of both the suppression judge and the appellate court when reviewing a challenged search warrant is simply to "ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed [citation omitted]" to support the issuance of a warrant. 103 S.Ct. at 2332. The magistrate's findings are to be accorded great deference, *id.* at 2331, and will only be reversed if the decision is unsupported by substantial evidence and is clearly erroneous.

Long before the *Gates* decision heralded a return to a "practical, commonsense" approach when evaluating hearsay information, *id.* at 2332, this Court held that "[s]o long *as the controls are adequate*, the 'controlled buy' alone may well establish probable cause to search a suspect premises, let alone verify from scratch an informant's oth-

erwise unestablished 'credibility.' " *Hignut, supra,* [17 Md. App.]. at 412, 303 A.2d at 180. We no longer subject an unnamed confidential informant to the rigors of an *Aguilar-Spinelli* [1] examination, *Gates, supra,* 103 S.Ct. at 2332; *see Brown v. State,* 57 Md.App. 186, 469 A.2d 865 (1984). So, if we assume, *arguendo,* that insufficient information was supplied in the affidavit to establish the informant's veracity,[2] the warrant stands or falls on the strength of its controlled buys. We must look then to the "adequacy of the controls," recognizing that the description of those transactions in *Hignut* represents the barest minimum of information possible to permit an application to "scrape by." *Id.* [17 Md.App.] at 407, 415 n. 8, 303 A.2d at 180, 181 n. 10.

█ The warrant in the instant case was issued predominantly on the strength of two "controlled buys" of illicit drugs made by an unnamed confidential informant from an individual named Thomas Johnson. The transactions, which occurred during the weeks of 29 May and 5 June 1982, took place *inside* the Inn. Johnson, who is known to the informant as "T.J.," is the manager of the Inn, which is owned by the appellant, Robert Matthews. The affidavit recites that Matthews was present during *both* of the controlled buys. In addition, the affidavit recites:

13. That C.I. [confidential informant] # 409 has observed Robert Matthews bring a locked black briefcase into the building, at which time a large amount of cash and controlled dangerous substances were observed by C.I. # 409 after the briefcase was opened and that the briefcase is transported in a white van with a blue stripe.

---

1. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

2. According to the affidavit:
    ... C.I. # 409 during three separate investigations has purchased under a controlled situation confirmed controlled dangerous substances, one of which has resulted in an arrest, and the other investigations are still pending.
    *See Barber v. State,* 43 Md.App. 613, 616, 406 A.2d 668, 670–71 (1979).

15. That your affiant has made contact with the Maryland State Police narcotics officer and that said officer has been investigating Robert Matthews and learned through his investigation that Matthews travels to the Easton and Salisbury areas and has displayed Controlled dangerous substances and money which he carries around in a locked black briefcase that he transports in a white van with a blue stripe.

16. That C.I. # 409 and the narcotics officer have never met, yet described the same individual, briefcase and contents, and the same vehicle used for transporting same.

The spirit in which applications for warrants are to be reviewed was stated by the Supreme Court in *Spinelli, supra:*

that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 1062 [18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745 [13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States,* 362 U.S. 257, 270–71, 80 S.Ct. 725, 735–36 [4 L.Ed.2d 697] (1960).

393 U.S. at 419, 89 S.Ct. at 590.

While the absence of detail causes the affidavit in the case *sub judice* to bear more resemblance to the one that "scraped by" in *Hignut, id.* [17 Md.App.] at 407, 415 n. 8, 303 A.2d at 180–181, n. 10, than to the ideal, with a boost from *Gates* it passes. The decision of the trial court denying Matthews's Motion to Suppress was correct.

## II.

■ The appellant contends that the trial court erred in granting the State's Motion for Reconsideration of the appellant's Motion to Suppress. He argues that the Motion to Suppress was in the nature of a final judgment and therefore could not be reopened. In confutation of this we cite *Cook v. State*, 281 Md. 665, 381 A.2d 671 (1978), wherein the Court of Appeals had this to say about the finality of a suppression order:

> As a preliminary matter, we address appellant's contention that the suppression order itself was a final adjudication. We need not dwell at length on this point, for it is widely agreed that exclusionary orders resemble mere evidentiary rulings, interlocutory in nature and hence are intrinsically non-final. *McGrath v. Gold*, 36 N.Y.2d 406 [369 N.Y.S.2d 62], 330 N.E.2d 35, 38 (1975) (suppression order interlocutory in nature and therefore not binding on state in subsequent prosecution of same defendant in different county). *See Lohss and Sprenkle v. State*, 272 Md. 113, 117, 321 A.2d 534 (1974). *See also DiBella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654 [660–61], 7 L.Ed.2d 614 (1962); *Cogen v. United States*, 278 U.S. 221, 227, 49 S.Ct. 118 [120], 73 L.Ed. 275 (1927).
>
> In our view, a ruling at trial that excludes illegally acquired evidence cannot be examined out of context. Such a ruling is typically only one of many made during the course of a trial and does not become final until the proceeding as a whole is concluded. Thus, whether or not a suppression ruling will ultimately preclude relitigation of the legality of the search and seizure at a subsequent proceeding depends on whether the prior proceeding, taken as a whole, can be said to have concluded in the rendition of a final judgment.

*Id.* at 670, 381 A.2d at 674. Hence there was no final judgment to bar the State's Motion for Reconsideration as it related to the granting of the suppression of evidence gathered through the search warrant in question.

■ Relying on Maryland Rule 736g2,[3] the appellant argues that there is no provision contained therein for the State to obtain a reargument or a rehearing upon its motion to suppress. That rule recognizes the right of the court, in the exercise of its discretion, to grant a hearing *de novo* on a renewal of a previously *denied* motion to suppress. There is, however, no limitation set forth in that rule on the court's discretion to grant a review of an order, interlocutory in nature, previously *granting* a motion to suppress evidence. In our view the trial court did not err in granting the State's Motion for Reconsideration.

### III.

■ Finally, the appellant challenges the return of the search warrant in that it was not, he alleges, returned to the issuing judge within five days as provided by Maryland Rule 780(e). In so doing, the appellant ignores Rule 8 which provides that, when considering a prescribed period of seven days or less, Saturdays, Sundays and legal holidays "shall not be counted." In the case *sub judice*, the search warrant was executed on 25 June 1982 and a return made on 1 July. As 26 and 27 June, 1982 were Saturday and Sunday respectively, the return was made within the required time.

*JUDGMENTS AFFIRMED.*

*COSTS TO BE PAID BY THE APPELLANT.*

---

3. Rule 736 g 2, previously Rule 736 f 2, effective 1 July 1977 (prior to the decision in *Cook, supra* ):

> If the court grants a motion to suppress evidence, the evidence shall be excluded and shall not be offered by the State at trial, except that suppressed evidence may be used in accordance with law for impeachment purposes. If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, in the exercise of its discretion, grants a hearing *de novo* on a renewal of the motion. A pretrial ruling denying the motion to suppress is reviewable on a motion for a new trial or on appeal of a conviction.