510 A.2d 264

Ann Miller **MORGAN**

v.

Michael Earl **MORGAN.**

No. 1429, Sept. Term, 1985.

Court of Special Appeals of Maryland.

June 10, 1986.

Edward S. Sobansky, Bladensburg, for appellant.

Ronald Miller (Reichelt, Nussbaum, Brown, Dukes & La-Placa, on brief), Greenbelt, for appellee.

Argued before WILNER, ALPERT and BLOOM, JJ.

WILNER, Judge.

In a nightmarish avalanche of motions, appellant Ann Morgan sought to reopen, upset, and avoid the *res judicata* bar of an enrolled decree of divorce nearly two years after it was entered. The Circuit Court for Prince George's County refused to permit her to do that. We shall affirm.

This saga began June 3, 1982, when appellee Michael Morgan filed a complaint for divorce based on a voluntary separation allegedly occurring in November, 1980. That action was docketed as Case No. 82–2380. Although duly served, Ann never responded to the complaint, to an amended complaint filed in November, 1982, or to a subsequent motion for or notice of a decree *pro confesso.* On April 21, 1983, following a hearing before an equity master, the court entered a decree of absolute divorce. No provision was made for spousal support, division of property, or monetary award based on marital property and, as there were no children born of the marriage, the decree was silent in that regard. No appeal was taken from that decree. In reliance on it, Michael remarried and eventually had a child by that marriage.

With the divorce, the erstwhile marital home in Hyattsville, that had been owned by the parties as tenants by the entireties, became owned by them as tenants in common. Ann continued to occupy it as her residence.

On February 26, 1985, Michael filed another action (Case No. 85–2383), seeking a sale of the property in lieu of partition. He alleged the basic facts, including the divorce and the inability of the parties to agree upon a reasonable disposition of the property. Ann responded on April 11 with two motions, one for the appointment of a guardian *ad litem,* alleging that she was incompetent to handle her own legal affairs, and one to reopen the divorce case and to consolidate the partition proceeding with it. As grounds for this second motion, Ann alleged that, at all times material to the divorce case, she was incompetent to handle her affairs, that Michael knew or should have known of that incompetence, that her failure to answer the divorce action was due to her incompetence, and that the divorce decree failed to provide for alimony or a division of marital property.

Michael moved to strike both motions. The motion for appointment of a guardian, he said, was not an appropriate

response to his petition, but should have been filed as a separate action. Moreover, it was not signed or verified, it was not properly captioned, it failed to describe her disability, it was not accompanied by verified certificates of two examining physicians, and it failed to allege facts showing that Ann lacked capacity either at the time the divorce was obtained or currently. He raised some of those same defenses to the second motion as well, arguing also that the motion to reopen should have been filed in the divorce action, that Ann alleged no facts warranting a revision of the divorce decree or showing fraud, mistake, or irregularity, and that she was estopped by laches from attempting to upset the decree.

On May 13, 1985, Michael filed a motion for summary judgment in the partition case. The motion was accompanied by two affidavits, one setting forth the factual basis for his right to have the property sold and the other setting forth facts tending to establish Ann's competence and a basis for applying the doctrine of laches. Ann did not respond to the motion for summary judgment.

All pending motions were heard on June 7. At the conclusion of the hearing, which, "due to an error in reading the docket," counsel for Ann did not attend, the court orally denied Ann's motions to appoint a guardian and to reopen the divorce case and granted Michael's motion for summary judgment. It signed an order appointing a trustee to sell the Hyattsville property in lieu of partition. On June 21, the court confirmed its rulings on the three motions by formal orders denying Ann's motions and granting Michael's.

Seventeen days later, on July 8, Ann moved the court to reconsider its rulings, claiming that, due to counsel's absence at the June 7 hearing, he was "not able to proffer" an affidavit from Ann's mother, purporting to attest to Ann's mental illness. Attached to the motion for reconsideration were two affidavits, one of Ann's mother and one of a Dr. Velma Powell. The mother acknowledged her daughter's

separation from Michael but stated that (1) prior to the separation, Ann had received a disability pension "due to her mental problems"; (2) Ann had been hospitalized "at various times from 1980 to the present due to her mental illness, which [Michael] knew about"; (3) the mother lived two blocks from Ann and had provided continual assistance to her since Michael left the home; and (4) Ann "was not aware of any divorce proceedings having been brought against her, due to her continuing mental illness."

Dr. Powell stated that Ann had been under her care for schizophrenia since June 7, 1984, that Ann had "a long history of psychiatric problems," that at the onset of her treatment (i.e., June, 1984), Ann was psychotic and hallucinating, that, at that time, she stated that she lived with her husband and was not divorced, that Ann was not aware that she had been sued for divorce, and that, in her (Dr. Powell's) opinion, Ann was "not sufficiently in touch with reality to be aware of or respond to divorce proceedings."

The court denied Ann's motion on August 2, 1985. No appeal was taken from the June 7 order appointing the trustee, from the June 21 orders disposing of the three motions, or from the August 2 order denying the motion for reconsideration.

What Ann did then was to turn her attention to the divorce case. Most of the motions filed in the partition case had been cross-filed in the divorce case, apparently because of the motion to consolidate the two proceedings. The last paper filed in the divorce case prior to the court's resolution of the two principal motions was the notice of the June 7 hearing, filed on May 8. On August 29, 1985, Ann sent to Michael what purported to be a copy of a motion to reopen the divorce case. When Michael discovered that she had neglected to file the original of that motion with the court, he filed the motion along with his own motion to dismiss it. That was done September 13, 1985.

On September 18, Ann moved to strike the motion to reopen, claiming that it was merely a "draft inadvertently

sent" to Michael's attorney, and that it was not intended to be filed. Simultaneously, she filed a new, combined motion to appoint a guardian *ad litem* and to reopen the divorce case. The grounds were precisely those raised in her motions of April 11 in the partition case—that she had been and still was incompetent and incapable of responding to the divorce action and that Michael knew or should have known of her condition. Michael opposed both of those motions.

All of this came to an end in the Circuit Court on October 15. The court that day (1) struck the motion filed by Michael on September 13 on the ground that it was filed in error, and (2) denied Ann's motion of September 18 on the ground that the issues raised therein were "clearly before the court previously and ruled upon at the hearing on June 7, 1985...." Ann then appealed.

Ann's sole claim in this appeal is that the order denying her motions in the partition case was interlocutory in nature and therefore cannot serve as a basis for applying *res judicata*. She may or may not be right in viewing the orders as interlocutory; she is clearly wrong, however, in her belief that the court erred in its ultimate conclusion.

■ Although the issue presented to us involves the scope and application of claim or issue preclusion (*res judicata* or collateral estoppel), we note at the outset that, had the court granted Ann's initial motion to reopen the enrolled divorce decree, it would have erred as a matter of law. Ann's motion of April 11 contained a bald allegation of incompetence unsupported by any facts explaining or establishing such incompetence; it demonstrated neither fraud, mistake, nor irregularity in the divorce proceeding; it offered nothing to indicate that Ann had a meritorious defense to the action; and it offered no facts to show that she had acted with due diligence in attempting to upset the two-year old judgment. The mere fact that the divorce decree was silent as to alimony or marital property does not even permit an inference, much less suffice as a showing,

that Ann would be entitled to alimony or a monetary award. In short, none of the requirements for upsetting an enrolled decree were even well-pled. Even the two affidavits, filed with the motion to reconsider the June 7 determinations, added little. The court did not abuse its discretion in rejecting Dr. Powell's bald statement as to Ann's condition in 1982, when she had no contact with Ann until June, 1984.

The preclusion issue is not quite so easy, but in the end we think the court was correct.

■ Michael's action was for a sale in lieu of partition. That proceeding was governed by Ch. BJ of the Md.Rules, and, by virtue of Md. Rule BJ71, by the Ch. BR Rules (Sales—Judicial) and Md. Rule 2–543, dealing with court auditors. The Ch. BR Rules provide for (1) a decree of sale, and, if necessary, appointment of a trustee to conduct the sale—Rule BR2, (2) filing a bond by the trustee—Rule BR3, (3) the sale—Rule BR4, (4) a report of the sale—Rule BR6 a, (5) ratification of the sale after giving the parties an opportunity to file exceptions—Rule BR6 b, and (6) referral to an auditor to state an account—Rule BR6 b.5. In addition, Md. Rule 2–543 provides for an opportunity to except to the auditor's account and to have a hearing on the exceptions.

From the record before us, it seems clear that this process has not yet been completed. Although a trustee was appointed and directed to sell the property, the property has not yet been sold, and so there has obviously been no report or ratification of sale. The last item in the record of the partition proceeding is the filing of a bond by the trustee.

It is equally clear, however, that in granting Michael's motion for summary judgment, denying Ann's principal motions, and ordering the property sold, the court considered and rejected on the merits Ann's claim of incompetency and her effort to reopen the divorce case. The order of June 7 appointing the trustee to sell the property necessarily rested on a finding that the enrolled divorce decree

entitled Michael to that relief, that Ann was not entitled to go behind that decree, and that she was not entitled to the appointment of a guardian. That order, technically interlocutory in the sense that it did not finally conclude the proceeding, was immediately appealable under Md.Code Ann.Cts. & Jud.Proc. art., § 12–303(3)(v).

As a general rule, neither *res judicata* nor collateral estoppel comes into play unless the ruling upon which it is based was either itself a final judgment or was rendered in a proceeding that culminated in a final judgment. *See Cook v. State*, 281 Md. 665, 669, 381 A.2d 671, *cert. denied* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978). As the *Cook* Court observed, however, "[f]inality is a concept which does not lend itself to concise delineation." *Id.*, 669, 381 A.2d 671.

In this regard, the Restatement 2d of Judgments draws a distinction between pure *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). Section 13 states:

"The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action *that is determined to be sufficiently firm to be accorded conclusive effect.*" (Emphasis added.)

The Restatement elaborates on this in comment g to § 13, in particular this part of comment g:

"Usually there is no occasion to interpret finality less strictly when the question is one of issue preclusion, that is, when the question is whether decision of a given issue in an action may be carried over to a second action in which it is again being litigated.... But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a

complete finish. *In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. . . . Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered.* Thus preclusion should be refused if the decision was avowedly tentative. *On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.* The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision." (Emphasis added.) [1]

There is substantial support for the Restatement view in the case law. In *Lummus Company v. Commonwealth*

---

1. Following the text of comment g, the Restatement gives three illustrations of circumstances in which an earlier interlocutory determination may properly be used as a basis for precluding relitigation of the issue. The second of the illustrations is particularly instructive in the context of this case:

   "In the course of an interpleader action to determine the security interests of a number of claimants in property of a debtor, claimant A applies for a determination as to the validity of notes made by claimant B and endorsed to A, evidently secured by part of the interpleaded property. The interpleader court makes various findings upholding the validity of the notes, but an appeal is dismissed on the ground that a determination of liability without more is not an appealable final decision. If the court in a separate action by A against B to recover the amount of the notes determines that the findings as to the validity of the notes were adequately deliberated and firm, it should hold those findings conclusive in the separate action. The court as a discretionary matter may hold the issues as to the validity of the notes to be conclusively settled."

   The court's June 7 determination of Ann's rights is, in nearly every respect, equivalent to the interpleader decision described in the illustration, with the even more compelling factor that it was immediately appealable.

*Oil Refining Company,* 297 F.2d 80 (2d Cir.1961), *cert. denied* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), Judge Friendly wrote for the Court, at 89:

> "Whether a judgment not 'final' in the sense of 28 U.S.C. § 1291 [the Federal counterpart to Cts. & Jud.Proc. art., § 12–301, requiring a 'final decision' for appeal purposes], ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. *'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."* (Emphasis added.)

*See also O'Reilly v. Malon,* 747 F.2d 820 (1st Cir.1984) (per curiam); *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149 (5th Cir.1982), *vacated on other grounds* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990 (7th Cir.1979), *cert. denied* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1982); *Zdanok v. Glidden Company, Durkee Famous Foods Division,* 327 F.2d 944 (2d Cir.), *cert. denied* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Sherman v. Jacobson,* 247 F.Supp. 261 (S.D.N.Y.1965).

The Maryland Court of Appeals touched on this concept in *Cook v. State, supra,* 281 Md. 665, 381 A.2d 671. Cook was brought to trial in Baltimore County for armed robberies occurring on November 8 and 9, 1973. The court found that certain evidence had been obtained by the State unlawfully, suppressed that evidence, and then granted Cook's motion for mistrial. Later, Cook was brought to trial in Harford County for an armed robbery occurring on November 14, 1973. Some of the evidence suppressed by the court in Baltimore County was sought to be used in the Harford County case; in contrast to the earlier ruling, the Harford County court denied the motion to suppress, rejecting in the process Cook's argument that the State was precluded by

*res judicata* and collateral estoppel from relitigating that issue.

The Court of Appeals also rejected that argument, on the ground that the earlier suppression ruling was purely inter-locutory, could not be appealed by the State,[2] and, in view of the mistrial, was not in any sense a final determination. In reaching that result, the Court distinguished *People v. Williams*, 59 Ill.2d 557, 322 N.E.2d 461 (1975), where a contrary result was reached. Under Illinois law, the Court noted, the State could have appealed the suppression order. There was a rule in Illinois that, if the State failed to exercise that right, it was precluded from relitigating the issue in a subsequent charge based on the same offense, and all the Illinois court did, according to the Maryland Court, was to extend that preclusion rule to a subsequent charge based on a different offense. Although double jeopardy principles may serve to preclude relitigation even where the State has been denied the right of appeal, the Court continued, to the extent that those principles do not apply, "appealability is most certainly a relevant factor in measuring finality for purposes of collateral estoppel."[3] 281 Md. at 674, 381 A.2d 671.

We do not regard *Cook* in any sense as a rejection of the Restatement view. Nor is it necessary to dwell on how much weight may be given to the appealability of the earlier predicate determination, especially in this kind of case.

Actions for the judicial sale of property, including sales in lieu of partition, may be regarded as comprising three sequential, but distinct types of proceedings. First, the plaintiff must satisfy the court that he has a right to have

---

2. The case arose before the enactment of Md.Code Ann.Cts. & Jud. Proc. art., § 12–302(c), giving the State a limited right to appeal orders suppressing evidence in criminal cases.

3. In a concurring Opinion, Judge Eldridge rejected appealability of the earlier ruling as "a relevant factor in determining when collateral estoppel applies *in criminal cases*." *Id.*, 679, 381 A.2d 671 (emphasis added).

the property sold; next, he must show that the sale was conducted fairly and in accordance with applicable procedural requirements; and, finally, he must show that the proposed distribution of the proceeds of sale is proper. Each of these may be separately challenged and adjudicated, and each culminates in a separate order of court—an order directing the sale, an order ratifying the sale, and an order ratifying the auditor's account. In a mortgage foreclosure proceeding, the first of these phases may, to a large extent, be *ex parte,* and so the mortgagor is permitted to challenge the mortgagee's right to sell by excepting to ratification of the sale. *See Fisher v. Federal National Mortgage Association,* 360 F.Supp. 207 (D.Md.1973). But even in a foreclosure proceeding, and certainly in other judicial sale actions, if the defendant indeed does challenge the right to sell prior to the sale and the court actually determines that right after a proper hearing, that issue cannot be relitigated in a subsequent phase of the action. *See Geisey v. Holberg,* 185 Md. 642, 654, 45 A.2d 735 (1946); *cf. Bachrach v. United Cooperative,* 181 Md. 315, 318–20, 29 A.2d 822 (1943).

Because an order directing the sale of property is immediately appealable under Cts. & Jud.Proc. art., § 12–303, the Maryland courts have been spared, in recent times, the need to consider whether such an order, entered in a judicial sale proceeding, might be regarded as a final order appealable under § 12–301. Even prior to the enactment of the precursor of § 12–303, however, the Court of Appeals permitted immediate appeals to be taken from orders directing the sale of mortgaged property, thus apparently regarding such orders as final in nature. *See Robertson v. Am. Homestead Assn.,* 10 Md. 397 (1857); *Hays v. Dorsey,* 5 Md. 99 (1853); *Williams v. Williams,* 7 Gill 302 (1848); *see also Della Ratta v. Dixon,* 47 Md.App. 270, 422 A.2d 409 (1980), tracing the history of § 12–303. That appears to be the rule generally. *See* 59 C.J.S. *Mortgages* § 685 (p. 1242); *MDG Supply, Inc. v. Diversified Investments, Inc.,* 463

P.2d 525, 528, 463 P.2d 525 (Hawaii 1969), *cert. denied* 400 U.S. 868, 91 S.Ct. 99, 27 L.Ed.2d 108 (1970).

With this background, it seems clear to us that Ann's asserted right to reopen the divorce case and to have a guardian appointed for her were fully litigated in the partition case, and a decision that we regard, in the words of the Restatement § 13, comment g, as "adequately deliberated and firm" was rendered. We therefore see "no really good reason for permitting it to be litigated again." *Lummus Company v. Commonwealth Oil Refining Company, supra*, 297 F.2d at 89.

JUDGMENT AFFIRMED;

APPELLANT TO PAY THE COSTS.